UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HESHAM AWAD, SHERIN AWAD, AHMED
AWAD, JEHAN AWAD, NABIL EL SHAIKH,
ASHA EL SHAIKH, YUSUF ELSHAIKH,                          18 Civ. 10810  (    ) (    )
OMAR ELSHAIKH and MOHAMED OMAR,

                            Plaintiffs,                    **COMPLAINT AND**
                                                          **JURY DEMAND**

          -against-

SHARIF OMAR and SAMI OMAR,

                            Defendants.
-------------------------------------------------------------------x

  Plaintiffs, HESHAM AWAD, SHERIN AWAD, AHMED AWAD, JEHAN AWAD,

NABIL EL SHAIKH, ASHA EL SHAIKH, YUSUF ELSHAIK, OMAR ELSHAIKH and

MOHAMED OMAR (collectively, "Plaintiffs"), by and through their attorneys, Klein &

Solomon, LLP,  as and for their Complaint herein, allege as follows:

## Summary of the Suit

  1. This case involves a long-term scheme by Defendants, SHARIF OMAR and

SAMI OMAR (collectively, "Defendants"), to steal their sisters' interest in a valuable family

pharmaceutical company and the real estate upon which the pharmaceutical manufacturing plant

is located, and to loot two other family real estate investments located in New York City to the

financial detriment of all of the Plaintiffs. Over the past eight years, Defendants (i) out-right stole

Plaintiffs SHERIN AWAD's ("Sherin") and ASHA EL SHAIKH's ("Asha" and collectively

with Sherin, the "Sisters") shares of stock in Liptis Pharmaceuticals USA Inc. and Liptis Holding

Corp. (collectively referred to herein as "Liptis"), and (ii) misappropriated over $20,000,000 in

cash from two other entities owned by the Plaintiffs, New Life Holding Corp. ("New Life") and

Omar Holding Corp. ("Omar Holding"), by diverting, commingling and misappropriating the

proceeds from loans secured by mortgages on the properties owned by New Life and Omar Holding.

2.      For many years prior to 2009, Lotfi Omar ("Lotfi"), the Omar family patriarch and father of Plaintiffs, Sherin Awad and Asha El Shaikh, and the Defendants, owned and operated a family retail pharmacy known as Leptis Drugs at 1612 Westchester Ave, Bronx, New York (the "Bronx Property"). Lotfi purchased the Bronx Property in 1980 through his real estate investment entity, Omar Holding. Sherin and Asha both obtained their pharmacist licenses and worked alongside their father at Leptis Drugs for many years. Sherin's husband, Hesham Awad, worked alongside Lotfi as a manager in the store for over sixteen years.

3.      Upon retiring from Leptis Drugs in 2009, Lotfi turned over control of the Bronx Property to the Defendants. Soon after, Defendants leased the building on the Bronx Property, where Leptis Drugs operated, to Walgreens Company. However, in order to induce Walgreens to lease the premises, Defendants committed Sherin and Asha to work for Walgreens as pharmacists for two years, in order to facilitate the transition from Leptis Drugs to Walgreens.

4.      In or about 2008, Sami Omar, Sherin and Asha purchased the property at 110 Red Schoolhouse Road, Spring Valley, New York (the "Liptis Property"), and re-developed the existing building into a pharmaceutical manufacturing plant and corporate offices for Liptis Pharmaceuticals USA Inc.  The shares of stock for Liptis (both the holding company that owns the Liptis Property and the operating entity) were divided between Plaintiffs, Sherin Awad and Asha El Shaikh, and Sami. In accordance with Islamic law, since sons inherit two shares for each share inherited by daughters, the Defendant Sami Omar received a fifty (50%) percent interest in the two Liptis entities, while the Sisters each received a twenty-five (25%) interest in the two Liptis entities.

2

5.     In or about 2009, Defendants began borrowing money using the properties owned by Omar Holding and New Life as collateral. In or about 2011, Defendants forged transfer documents and tax returns in order to steal the Sisters' shares of stock in both Liptis entities. The Sisters neither agreed to sell their shares of stock in Liptis, nor were they ever told by Defendants (or anyone else) that their shares were being transferred. The only notice given to the Sisters was buried in tax returns prepared by Defendants' accountants and sent to the Sisters well after the date upon which the tax returns were filed. Purportedly to cover their theft of the Sisters shares of stock of Liptis, Defendants made two payments of $33,000 and $80,000 to the Sisters, falsely telling them both that the payments were bonus distributions made to family members after the valuable Walgreens lease was signed, and as additional compensation for the Sisters agreeing to work in the Walgreens pharmacy for two years during the "transition period." The sisters were also told that Sherin's share was larger than Asha's share, because Sherin's husband, Hesham Awad, had worked so many years for Lotfi in the Leptis pharmacy in the Bronx, and Sherin continued to work as the pharmacy's manager. At no time did Defendants tell their Sisters that the payments were for the purchase of their shares of stock of Liptis. Nevertheless, Defendants forged the necessary transfer documents, and instructed their accountants to make false entries in the Sister's tax returns to reflect the illegal transfers of the Sisters' shares of stock of the two Liptis entities.

6.     In furtherance of their scheme to defraud the Plaintiffs, Defendants, through a series of thefts and fraudulent mortgages, misappropriated over $20,000,000 in equity from Omar Holding and New Life, by obtaining loans secured by the properties owned by Omar Holding and New Life. The proceeds from these loans were neither used for the benefit of Omar Holding or New Life, nor distributed to the Plaintiff-shareholders of those entities. In order to obtain these multi-million dollar mortgage loans, Defendants forged shareholder agreements and

3

prepared and submitted false and misleading loan documents, personal financial statements, affidavits of title, affidavits of ownership, corporate resolutions, and leasing documents and information, using electronic wire transmissions and the U.S. mail to the lending institutions and other related parties. In total, between 2009 and 2017, the Defendants burdened the New Life and Omar Holding properties with over $20,000,000 of mortgage indebtedness, diluting a substantial portion of the Plaintiffs' equity interests in New Life and Omar Holding.

7.     Additionally, for at least six years and through 2017, Defendant Sharif Omar extorted money from Plaintiff Hesham Awad by demanding cash payments several times a year, under the implicit threat that he would terminate Hesham Awad's lease of the Bronx Property, if he did not comply.  In total, Sharif Omar extorted over $70,000 from Hesham Awad.

8.     Through this suit, Plaintiffs seek to hold Defendants and those who conspired with them accountable for their systematic misappropriation of the Sisters' shares of stock in the two Liptis entities, and a substantial portion of Plaintiffs' equity interests in New Life and Omar Holding. Because the Defendants' scheme and long-term pattern of illicit conduct involved the violation of certain federal statutes,[1] Plaintiffs bring this suit against the Defendants pursuant to the civil damages provisions of the Racketeering Influenced and Corrupt Organizations Act. 18 U.S.C. §§1961, et seq. ("RICO").  Further, Plaintiffs assert New York state law claims against Defendants for breach of fiduciary duties and conversion, which claims are redressable herein pursuant to the Court's supplemental jurisdiction.

## Jurisdiction And Venue

9.     This Court has federal question jurisdiction under 28 U.S.C. §1331 and 18 U.S.C. §1964(a), and supplemental jurisdiction of state law claims under 28 U.S.C. §1367.

---

[1]  Mail fraud, 18 U.S.C. §1341; Wire fraud, 18 U.S.C. §1343; Bank fraud, 18 U.S.C. §1344 statutes.

10.     Venue is appropriate in this Court because (a) one of the Defendants resides in this District and (b) most of the Defendants' acts and transaction constituting violations of RICO, and their related tortious conduct, occurred in this District.

## Parties

11.     Plaintiff HESHAM AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the son-in-law of Lotfi.

12.     Plaintiff SHERIN AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the daughter of Lotfi.

13.     Plaintiff AHMED AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the grandson of Lotfi.

14.     Plaintiff JEHAN AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the granddaughter of Lotfi.

15.     Plaintiff NABIL EL SHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the son-in-law of Lotfi.

16.     Plaintiff ASHA EL SHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the daughter of Lotfi.

17.     Plaintiff YUSUF ELSHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the grandson of Lotfi.

18.     Plaintiff OMAR ELSHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the grandson of Lotfi.

19.     Plaintiff MOHAMED OMAR is an individual who resides at 7073 Kennedy Blvd, North Bergen, New Jersey 07047, and is the brother of Lotfi.

20.     Upon information and belief, Defendant SHARIF OMAR is an individual who resides at 430 East 86th Street, Apt 15F, New York, New York 10028, and is the son of Lotfi.

21.     Upon information and belief, Defendant SAMI OMAR is an individual who resides at 2747 Paradise Road Unit 3103, Las Vegas, Nevada 89109, and is the son of Lotfi.

## Facts

### Background

22.     Liptis Pharmaceuticals USA, Inc. was a family owned business, originally formed by the parties' father, Lotfi Omar.[2]  Liptis Pharmaceuticals USA, Inc. engages in developing pharmaceuticals, nutraceuticals, and consumer healthcare products for customers worldwide. It offers products in various therapeutic areas, including cardiovascular, depression and generalized anxiety disorders, gastrointestinal and infectious disease, motion sickness/nausea, osteoarthritis, diabetes, aphrodisiacs and sexual dysfunction, liver disease, dermatology, anorectal disease, hyperlipidemia, women's health, musculoskeletal disorder, and nutrition; and products to relieve impotence and sexual dysfunction in men. The company is based in Spring Valley, New York. Liptis Holding Corp. is a single purpose entity that owns the real property where Liptis Pharmaceuticals USA, Inc. is located.

23.     Significantly, upon information and belief, Liptis is about to get FDA approval on several medications that it is currently marketing in the Middle East through its affiliated entity, Liptis Egypt, including an oral anti-diabetic medication that, upon approval, will cause the value of Liptis to increase significantly.

---

[2] Lotfi Omar has four children, Plaintiffs Sherin Awad and Asha El Shaikh, and Defendants Sami Omar and Sharif Omar.  Plaintiff Hesham Awad is married to Plaintiff Sherin Awad, and together they have two children, Plaintiffs Ahmed Awad and Jehan Awad.  Plaintiff Nabil El

24.     On or about May 1, 2006, the Sisters each acquired a 25% share in Liptis Pharmaceuticals USA Inc. from their father, Lotfi.  On January 1, 2009, they each acquired a 40% share in Liptis Holding LLC from Lotfi.

25.     In addition, all of the Plaintiffs own shares in Omar Holding and the Sisters own shares in New Life, in various amounts.

26.     New Life is a single purpose entity that owns the real property and building located at 2162 Third Avenue, New York, New York (heretofore defined as the "Manhattan Property").  The New Life building is a four-story commercial building containing at least five units.

27.     Omar Holding is a single purpose entity that owns the real property and building located at 1618 Westchester Avenue, Bronx New York (heretofore defined as the "Bronx Property").  The Bronx Property is improved with a one-story commercial building containing nine units.

28.     Upon information and belief, from in or about 2009 through the date hereof, Defendants commingled the income from Liptis, Omar Holding and New Life.

29.     During the period from in or about 2011 through 2017, the Defendants made certain distributions of the commingled income from Liptis, Omar Holding and New Life to the Sisters and to their mother, Hekmat Omar ("Hekmat"). However, Defendants did not cause the entities to pay the distributions to the Sisters and Hekmat as ordinary dividends. Upon information and belief, in order to create tax deductions for the benefit of Omar Holding, New Life and Liptis, Defendants fraudulently paid the distributions to the Sisters and Hekmat as employment wages, even though none of them were employed by any of those entities.

---

Shaikh is married to Plaintiff Asha El Shaikh, and together they have two children, Plaintiffs Yusuf ElShaikh and Omar ElShaikh.  Plaintiff Mohammad Omar  is Lotfi Omar's brother.

## The Overall Fraudulent Scheme

30.    Defendants' fraud consists of a scheme to steal Plaintiffs' valuable investments. In furtherance of the scheme, Defendants forged shareholder agreements, stock transfer documents, personal financial statements, affidavits of title, affidavits of ownership, corporate documents, leasing documents and bank loan documents. They misappropriated the Sisters' shares of stock in the two Liptis entities, and looted the real estate investments owned by Omar Holding and New Life through a series of fraudulent mortgage loans.

31.    The Sisters never agreed to sell their shares of stock in Liptis to anyone or any entity.  Further, at no time did they ever sign a stock purchase agreement, a stock transfer or any other stock transfer document to convey their shares of Liptis. Those shares of stock of Liptis were stolen from them by Defendants in 2011.

32.    As part of their scheme to steal the Sisters' shares of stock in Liptis, and to reflect the sales in the Sisters' tax returns, Defendants, through the use of the U.S. mail and/or national recognized wire services, made payments of $33,000 and $80,000 to Asha and Sherin, respectively, telling them both that the payments were distributions as and for additional compensation to the Sisters for agreeing to work in the Walgreens pharmacy for two years during the "transition period." The sisters were also told that Sherin's share was larger than Asha's share, because Sherin's husband, Hesham Awad, had worked so many years for Lotfi in the Leptis pharmacy in the Bronx. At no time did Defendants tell their Sisters that the payments were for the purchase of their shares of stock of Liptis.

33.    Upon information and belief, in 2011, the property owned by Liptis had an approximate value in excess of $3,000,000, and the Liptis entities had an approximate total value in excess of $5,000,000.  At the time Defendants stole the Sisters' shares of stock in Liptis, they had a value substantially in excess of the amounts paid by the Defendants to the Sisters.

34.     In 2011, Defendants caused their accountants to fraudulently report in the Sisters' federal tax returns that the payments were for the purported sale of the Sisters' shares of stock of Liptis.

35.     Throughout their scheme, Defendants used a law firm based in Nassau County, New York (hereinafter, the "Law Firm LLC"),[3] either knowingly or unwittingly, to prepare and transmit, through the U.S. mail and/or nationally recognized wire services, misleading stock transfer documents, shareholder agreements, corporate records and resolutions, personal financial statements, affidavits of title, affidavits of ownership, leasing records and other financial records.

36.     Upon information and belief, as a result of Defendants' theft of the Sisters' shares of stock in 2011, by December 2011, Defendant SAMI OMAR owned 45% of Liptis and Defendant SHARIF OMAR owned 55% of Liptis.

37.     Upon information and belief, through threats and extortion, Defendant SHARIF OMAR subsequently coerced SAMI OMAR to transfer all of his shares of stock of Liptis to SHARIF OMAR. As a result, as of the date of this complaint, upon information and belief, Defendant SHARIF OMAR is the sole shareholder and owner of the two Liptis entities.

38.     In addition, through a brazen scheme of misrepresentations and fraud, and through the use of the U.S. mail and/or nationally recognized wire services, Defendants misappropriated over $20,000,000 of loan proceeds from New Life and Omar Holding, secured by mortgages against the real property owned by those entities.

---

[3]  "Lawfirm LLC" is a fictitious name for the non-party law firm which represented Defendants in matters related to Omar, New Life and Liptis. Upon information and belief, Lawfirm LLC facilitated and was an accomplice to Defendants' actions described herein. A member of Law Firm LLC appears on certain loan documents of Omar Holding as an officer  of Omar Holding. However, for purposes of this litigation, Plaintiffs are using the fictitious name "Law Firm LLC"

39.     On or about May 1, 2009, Defendants fraudulently applied for a mortgage loan from Banco Popular, using the Bronx Property as collateral for the loan. Upon information and belief, the loan application submitted to Banco Popular for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

40.     On or about August 20, 2009, relying upon the false and misleading information and documents submitted by Defendants, Banco Popular approved the mortgage loan to Defendants. As a result of the fraudulently obtained loan, Defendants received $4,235,213.64 in proceeds from Banco Popular. That mortgage was then consolidated with prior mortgages, burdening the Bronx Property with a total mortgage indebtedness of $4,500,000.

41.     On or about March 1, 2012, Defendants fraudulently applied for a mortgage loan from Investors Bank, using the Bronx Property as collateral for the loan.  Upon information and belief, the loan application submitted to Banco Popular for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

42.     On or about June 12, 2012, relying on the false and misleading information and documents submitted by Defendants, Investors Bank approved the mortgage loan to Defendants. As a result of the fraudulently obtained loan, Defendants received $2,299,019.55 in proceeds from Investors Bank.  That mortgage was then consolidated with prior mortgages, burdening the Bronx Property with a total mortgage indebtedness of $6,552,000.

---

to avoid subjecting Law Firm LLC to any embarrassment, because, at this time, Plaintiffs do not know the full extent of Law Firm LLC's knowledge of Defendants' fraudulent scheme.

43.     On or about March 1, 2015, Defendants fraudulently applied for a mortgage loan from TD Bank, using the Bronx Property as collateral for the loan. Upon information and belief, the loan application submitted to Banco Popular for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

44.     On or about August 6, 2015, relying on the false and misleading information and documents submitted by Defendants, TD Bank approved the mortgage loan to Defendants. As a result of the fraudulently obtained loan, Defendants received $4,899,840.77 in proceeds from TD Bank. That mortgage was then consolidated with the prior mortgages.

45.     In total, Defendants have burdened the Bronx Property owned by Omar Holding with more than $11,400,000 of indebtedness as a result of the mortgage loans described herein, for their own personal gain.

46.     In January 2017, Defendants burdened the Bronx Property with an additional $1,000,000 mortgage filed, upon information and belief, as additional collateral for a $1,000,000 loan made to Liptis Pharmaceutical USA, Inc. Defendants utilized their illegal ownership and control of Liptis to facilitate this mortgage, by cross-collateralizing Omar Holding's property for Liptis Pharmaceutical USA, Inc.'s debt.

47.     As a result of the fraudulent mortgages described herein, the Bronx Property is now encumbered with a $12,434,073 secured mortgage debt, and none of the proceeds were invested into the Bronx Property or shared with any of the Plaintiffs, as shareholders of Omar Holding.

48.     With regard to the New Life property, upon information and belief, on or about July 1, 2009, Defendants fraudulently applied for a mortgage loan from ER Holdings, LLC,

using the New Life property as collateral for the loan. Upon information and belief, the loan application submitted to ER Holdings, LLC, for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about New Life and the Manhattan Property, including bogus leases and inflated rent rolls.

49.     On or about October 20, 2009, relying on the false and misleading information and documents submitted by Defendants, ER Holdings, LLC approved the mortgage loan to Defendants, which used the New Life property as collateral. As a result of the fraudulently obtained loan, Defendants received $1,100,000 in proceeds from ER Holdings, LLC.  Upon information and belief, Defendants used $100,000 of the loan proceeds for construction expenses pertaining to the New Life property, and transferred the remaining $1,000,000 of the loan proceeds to Liptis Pharmaceuticals USA, Inc.  On May 10, 2012, that mortgage was then assigned to Investors Bank. On May 24, 2012, the mortgage was consolidated with a new mortgage from Investors Bank, burdening the property owned by New Life with a total consolidated mortgage loan debt of $1,975,000.

50.     On March 1, 2017, Investors Bank assigned the New Life consolidated mortgage, which at the time had a total outstanding debt of $1,762,177, to BankUnited, N.A.

51.     Upon information and belief, on December 1, 2017, Defendants fraudulently applied for a mortgage loan from BankUnited, N.A., using the New Life property as collateral for the loan. Upon information and belief, the loan application submitted to BankUnited, N.A. for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about New Life and the Manhattan Property, including bogus leases and inflated rent rolls.

52.     On or about March 6, 2017, relying on the false and misleading information and documents submitted by Defendants, BankUnited, N.A. approved the mortgage loan to Defendants, which used the New Life property as collateral.  As a result of the fraudulently obtained loan, Defendants received $7,987,822.43 in loan proceeds from BankUnited, N.A.  The New Life mortgage loans were then consolidated into a combined $9,750,000 mortgage.

53.     In total, Defendants have encumbered New Life's real property with more than $9,750,000 in mortgage loan indebtedness.  The New Life property was used as collateral for the combined $9,750,000 mortgage lien, and little of the proceeds were invested into the Manhattan Property and none of the proceeds was shared with either of the Sisters or New Life shareholder/family members.

54.     In furtherance of their scheme to defraud, Defendants relied upon the professional services of its attorneys, Law Firm LLC, who, either knowingly or unknowingly, facilitated the fraudulent transactions described herein, including the preparation of false stock transfer documents and shareholder agreements that were forged by Defendants and the preparation and transfer by U.S. mail and/or electronic wire services of false and misleading financial documents, corporate records and resolutions, personal financial statements, affidavits of title, affidavits of ownership, leasing documents and rent rolls required by and relied upon by the aforesaid lending banks to secure the mortgage loans described herein. Law Firm LLC, either knowingly or unknowingly, facilitated Defendants' conversion of the Sisters' ownership interests in the two Liptis entities, and the dilution of the Plaintiffs' ownership interests in New Life and Omar Holding.

55.     In total, Defendants have stolen over $20,000,000 from Plaintiffs, plus all of the Sisters' shares of stock of Liptis.

## As And For A First Claim For Relief
### (RICO Violations By All Defendants)

56.     Pursuant to 18 U.S.C. §1962(b), it is unlawful "for any person through a pattern if racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise  . . . ."  Further, pursuant to 18 U.S.C. §1962(c), it is unlawful "for any person employed by or associated with any enterprise  . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  In addition, pursuant to 18 U.S.C. §1962(d), it is unlawful "for any person to conspire to violate any of the provisions of subsections . . . (b), or (c) of [§1962]."

57.     The course of conduct described above constitutes violations by Defendants of §1962(b), (c) and (d) of RICO.  The Defendants engaged in a pattern of wrongful conduct involving mail fraud, wire fraud and bank fraud (the "Predicate Acts") to enable Defendants to acquire the Sisters' interests in, and then maintain control over, Liptis, and to mortgage the real properties owned by Liptis, New Life and Omar.  Further, the Defendants combined together to engage in a pattern of wrongful conduct involving the Predicate Acts to conduct, participate, directly or indirectly, in the conduct of the conspiracy to allow Defendants to rain in control of Liptis, Omar and New Life, and thus plunder, pillage and loot the assets of Liptis, Omar and New Life over the last ten (10) years.  As a result of Defendants' wrongful conduct, the equity value of Liptis, Omar and New Life has been substantially diminished to the Plaintiffs' detriment, and the Sisters' shares of stock and interests in Liptis have been stolen.

**Predicate Acts**

58.     <u>Mail Fraud</u>

  (a) the Defendants participated in a scheme or artifice to defraud or attempt to defraud the Sisters of their shares of stock and interests in Liptis;

14

(b) the Defendants, or someone associated with the scheme, used the mails or caused the mails to be used, by placing or causing to be placed in an authorized depository for mail a letter intended to be sent or delivered by the United States Postal Service; and

(c) the use of the mail was for the purpose of executing the scheme.

In that regard, the United Stated mails were used on a regular, continuous and systematic basis in connection with the implementations and execution of the schemes set forth above.

59.    In connection with the scheme to defraud the Sisters of the shares in Liptis, Defendants knew, must have known, or should have known, that the United Sate's mails would be used in connection with some aspect of the furtherance of this scheme.   In particular: Defendants used the mail to provide fraudulent documents and information to their accountants to make fraudulent entries in the Sisters' tax returns for 2011 pertaining to their shares of stock and interest in Liptis, knowing that the accountants would use the mail to send such fraudulent tax returns to the Sisters.

60.    <u>Wire Fraud</u>

(a) the Defendants participated in a scheme or artifice to defraud or attempt to defraud the Sisters of their shares and interests in Liptis;

(b) the Defendants, or someone associated with the scheme or artifice, transmitted communications by means of a telephone, computer or fax machine connected to interstate wires for the purpose of executing such scheme or artifice; and

(c) the Defendants, or someone associated with the scheme or artifice, used a telephone, computer or fax machine connected to interstate wires willfully and with the specific intent to carry out some essential step in attempting to carry out the scheme or artifice to defraud or attempt to defraud the Sisters.

In that regard, the interstate wires were used on a regular, continuous and systematic basis in connection with the implementation and execution of the scheme to defraud the Sisters of their shares and interest in Liptis, as set forth above.   In particular: Defendants used the interstate wires to provide fraudulent documents and information to their accountants to make fraudulent

entries in the Sisters' tax returns for 2011 pertaining to their shares of stock and interest in Liptis, and caused the accountants to use the nationally recognized wire services to file such tax returns with the State of New York and the Internal Revenue Service.

61.   <u>Bank Fraud</u>

(a) the Defendants participated in a scheme or artifice to defraud or attempt to defraud financial institutions, by representing that they were authorized to secure mortgages, using the properties owned by New Life, Omar and Liptis, as collateral;

(b) the Defendants, or someone associated with the scheme, made use of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

(c) the Defendants, or someone associated with the scheme or artifice, used the false and fraudulent representations willfully and with the specific intent to carry out some essential step to carry out the scheme or artifice to defraud or attempt to defraud the financial institutions and Plaintiffs.

In that regard, the financial institutions were used on a regular, continues and systematic basis in connection with the implementation and execution of the scheme to defraud the financial institutions, by fraudulently securing mortgages that used the properties owned by Omar, New Life and Liptis as collateral, and thereby devaluing Plaintiffs' shares and interest in Omar, New Life and Liptis, as set forth above.  In particular:

(a) Defendants' mispresented to various banks and financial institutions that they were authorized to secure the mortgages, using the properties owned by Omar, New Life and Liptis as collateral for the mortgage loans, by means of fraudulent statements and documents; and

(b) Defendants utilized false and fraudulent statements and documents to secure said mortgages and to withdraw over $20,000,000 from various banks and financial institutions in proceeds for their own personal gain;

62.   <u>Pattern of Racketeering Activity</u>.  As described herein, the Defendants engaged in numerous acts of racketeering activity within ten years of each other.  The Predicate Acts and other wrongful conduct of the Defendants described herein were related in the sense that they

16

involved the same or similar purposes, results, participants, victims, and methods of commissions, and did not involve isolated or sporadic events. Further, there was continuity of conduct in that the Predicate Acts and other wrongful activities of the Defendants described herein extended over a consecutive period of time and involved conduct with the continuing wrongful activities.

63.    <u>Enterprise</u>.  Pursuant to 18 U.S.C. 1962(b), the Defendants engaged in the pattern of racketing activity described herein to empower Defendants to acquire Plaintiffs' interests in, and then maintain control over, the affairs, assets and interests of Omar, New Life and Liptis, an enterprise affecting interstate commerce within the meaning of 19 U.S.C. §1961(4).

64.    Further, pursuant to 18 U.S.C. §1962(c), Defendants, and other persons and entities not named as defendants herein, have participated in an associational enterprise-in-fact affecting interstate commerce.  The associational enterprise was devoted to the wrongful conduct and fraudulent purpose of enabling Defendants to acquire Plaintiffs' interests in, and then maintain control over, Liptis, Omar and New Life, thereby allowing Defendants to pillage, plunder and loot the assets of Liptis, Omar and New Life, over a ten year period.  Defendants' conduct resulted in the substantial dilution of value of Liptis, Omar and New Life, and thus, the inability of Plaintiffs to receive their interests in same.   The enterprise has an ongoing organization and functions as a continuing unit.  Defendants conducted the affairs of the enterprise through a pattern of racketeering activity described herein.  Accordingly, the joining together by Defendants, and other persons and entities not named as Defendants herein, for the purpose of allowing Defendants: (a) to misappropriate the ownership and/or assets of Liptis, Omar and New Life and (b) to acquire and then maintain control over the affairs of same, constitutes an associated-in-fact "enterprise" within the meaning of 19 U.S.C. §1961(4).

17

65.     In addition, the Defendants participated in varying capacities in the wrongful and fraudulent scheme described above to allow Defendants to (a) misappropriate the ownership and/or assets of Liptis, Omar and New Life in fraud of Plaintiffs, and (b) to acquire Plaintiffs' interests in, and then maintain control over, Liptis.   The Defendants willfully associated themselves with the schemes set forth herein and willfully participated in such scheme.  As such, Defendants, and those under their direction, committed numerous fraudulent and wrongful acts which constitute the predicate acts of mail fraud, wire frauds and bank fraud.  The Defendants knew about and agreed to facilitate the scheme, and provided knowing and substantial assistance toward the accomplishment of these wrongful goals.   In addition, the Defendants aided and abetted the Predicate Acts described herein.  Accordingly, pursuant to 18 U.S.C. §1962(d) and 18 U.S.C. §2, the Defendants are liable as principals and co-conspirators.

66.     Injury.  While some of Defendants' RICO violations may have occurred a number of years ago, the Defendants wrongful conduct did not give rise to a claim for relief under 18 U.S.C. §1964(c) until those violation resulted in an injury to Plaintiffs' business and property. Then, the RICO claim did not accrue until Plaintiffs learned that their shares of stock in Liptis were fraudulently transferred from their ownership and control, and that Liptis, Omar and New Life were substantially diluted by Defendants' actions in burdening the properties owned by Liptis, New Life and Omar with millions of dollars in mortgages loan indebtedness, and thus Plaintiffs suffered damages because they were not able to receive the value of their interests in same.  As shareholders in Liptis, Omar and New Life, Defendants owed an independent and direct legal duty to Plaintiffs, the breach of which caused harm and damage to the business and property of Plaintiffs.

67.     Further, although the fraudulent conspiracy described herein was directed primarily at Plaintiffs, the victim of the Defendants' fraudulent schemes and conspiracy were

both Plaintiffs and the financial institutions which loaned money to Defendants, based upon false and fraudulent pretenses.  Plaintiffs have been injured in their business or property by reason of a violation of 18 U.S.C. §1962.  Pursuant to 18 U.S.C. 1964(c), Plaintiffs are entitled to recover from the Defendants treble their actual damages, reasonable attorneys' fees and the costs and expenses of this action.

**As And For A Second Claim For Relief**
**(Breach of Fiduciary Duties)**

68.    Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "67" above, as if the same were set forth fully hereat.

69.    As shareholders and officers of Liptis, Omar and New Life, Defendants owed the Plaintiffs fiduciary duties of the highest magnitude, including:

(a) A duty of undivided loyalty;

(b) A duty to act in good faith in any matter relating to Liptis, Omar and New Life;

(c) A duty to avoid self–dealing and to not profit at the expense of Plaintiffs;

(d) A duty of full disclosure, including a duty to correct and clarify any prior misstatements or omissions of material facts; and

(e) A duty to not misappropriate or otherwise use funds, assets and business opportunities of Liptis, Omar and New Life for their personal use.

The course of conduct set forth above constitutes breaches by Defendants of their fiduciary duties that they owed to the Plaintiffs, which proximately caused harm and damage to Plaintiffs.

**As And For A Third Claim For Relief**
**(Conversion of Shares of Stock)**

70.    Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "69" above, as if the same were set forth fully hereat.

19

71.     Pursuant to their stock ownership, Plaintiffs SHERIN AWAD and ASHA EL SHAIKH each had clear legal ownership and right to possession of a 39.890411% share in Liptis Pharmaceuticals USA Inc. and a 40% share in Liptis Holding LLC.

72.     Defendants wrongfully misappropriated the Sisters' shares of stock for their own benefit, in violation of the Sisters' property rights.

73.     As a proximate result of Defendants' acts of conversion, the Sisters have been deprived of their property rights and suffered damages in excess of $3,000,000, in an amount to be proved at trial.

74.     The aforementioned acts of Defendants were willful, wanton, malicious and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

**Damages**

75.     The reasonably foreseeable consequences of the Defendants' wrongful conduct as set forth above were not only the systematic diversion of assets, income and opportunities that belonged to Plaintiffs, but also the prospect that Liptis, Omar and New Life will be rendered insolvent, so that Plaintiffs would no longer have the value of their interests and shares.

76.     Had the Defendants not engaged in the wrongful conduct set forth above, Plaintiffs would continue to own their shares in Liptis and maintain control over same.  In addition, Defendants' would not have had the opportunity to substantially dilute the value of Liptis, Omar and New Life, by burdening the properties owned by Liptis, Omar and New Life with over $20,000,000 of indebtedness.  Plaintiffs' shares in interest are currently valued at $6,232,609.36 in Liptis, Omar and New Life.  As a direct, proximate and consequential result of the Defendants' wrongful conduct, as set forth above, the value of Liptis, Omar and New Life

has been substantially diluted, with no likelihood of any distribution to Plaintiffs of their interests and shares.

77.     Plaintiffs have been injured in their business and property, and have suffered direct, proximate and consequential damages as a result of the acts described above in an amount not less than (a) for Plaintiff HESHAM AWAD's interests, $578,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar + $70,000, which is the sum of money Defendant Sharif extorted from Hesham Awad), (b) for Plaintiff SHERIN AWAD's interests, $3,672,228.67 (40% of $3,750,000, which is the total value of Liptis + 4.398427% of $12,434,073.96, which is the total diminution in value of Omar + 16.67% of $9,750,000, which is the total diminution in value of New Life), (c) for Plaintiff AHMED AWAD's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar), (d) for Plaintiff JEHAN AWAD's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar), (e) for Plaintiff NABIL EL SHAIKH's interests, $508,480.64 (4.0894131% of $12,434,073.96, which is the total diminution in value of Omar), (f) for Plaintiff ASHA EL SHAIKH's interests, $3,672,228.67 (40% of $3,750,000, which is the total value of Liptis + 4.398427% of $12,434,073.96, which is the total diminution in value of Omar + 16.67% of $9,750,000, which is the total diminution in value of New Life), (g) for YUSUF ELSHAIKH's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar), (h) for OMAR ELSHAIKH's interest, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar), and (i) for MOHAMED OMAR's interest, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar), plus interest from thereon from August 2009 to the date of judgment.  These damages include:

(a)     damages for the amounts that Plaintiffs which have been able to receive as shareholders in Liptis, Omar and New Life but were prevented from doing so on the basis of Defendants' wrongful conduct as set forth above; and

(b)     Separate and independent damages in the amount of the collection expense damages for the attorneys' fees and other expenses incurred in connection with their unsuccessful efforts to enforce their claims against Defendants.  Within the last two years, Plaintiffs' collection expense damages are in excess of $100,000.

78.     In addition, because the wrongful acts of the Defendants as described above were willful, intentional and malicious, or with such a high degree of recklessness that the Defendants knew, or must have known or should have known, that harm would likely result to the Plaintiffs, Plaintiffs seek an assessment of punitive damages against the Defendants in an amount not less than three times Plaintiffs' actual damages.

<u>**Attorneys' Fees**</u>

79.     As a result of the acts described above, Plaintiffs have employed the undersigned attorneys to prosecute their cause.  Pursuant to 19 U.S.C. §1964(c), Plaintiffs are entitled to recover reasonable attorneys' fees from the Defendants for trial of this cause, plus additional reasonable attorneys' fees for any further trials, hearings or appeals.

<u>**PRAYER**</u>

Plaintiffs respectfully request:

(1) That Plaintiffs have judgment against Defendants, jointly and severally, for an amount not less than the sum of (a) Plaintiffs' actual damages' as set forth above; (b) statutory treble damages under 18 U.S.C. §1964(c); (c) punitive damages in an amount not less than three time Plaintiffs' actual damages; (d) pre- and post-judgment interest at the highest lawful rate; and (e) reasonable attorneys' fees; and

22

(2) That the Court grant Plaintiffs an award of the costs and expenses of this action, and

such other, further and different relief which they may be entitled

## **JURY DEMAND**

Plaintiffs request a trial by Jury.

Dated:  New York, New York
       November 19, 2018

                                     **KLEIN & SOLOMON, LLP**

                             By: s/  Jay B. Solomon
                               Jay B. Solomon, Esq. (JBS-3855)
                               Attorneys for Plaintiffs
                               275 Madison Avenue, 11th Floor
                               New York, New York 10016
                               (212) 661-9400