UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HESHAM AWAD, SHERIN AWAD, AHMED
AWAD, JEHAN AWAD, NABIL EL SHAIKH,
ASHA EL SHAIKH, YUSUF ELSHAIKH,                    18 Civ. 10810 (NRB)
OMAR ELSHAIKH and MOHAMED OMAR,

                Plaintiffs,                      **FIRST AMENDED
                                              COMPLAINT AND
     -against-                                     <u>JURY DEMAND</u>**

SHARIF OMAR and SAMI OMAR,

                Defendants.
-------------------------------------------------------------------x

      Plaintiffs, HESHAM AWAD, SHERIN AWAD, AHMED AWAD, JEHAN AWAD,

NABIL EL SHAIKH, ASHA EL SHAIKH, YUSUF ELSHAIK, OMAR ELSHAIKH and

MOHAMED OMAR (collectively, "Plaintiffs"), by and through their attorneys, Belkin Burden

Wenig & Goldman, LLP, as and for their First Amended Complaint herein, allege as follows:

<u>**Summary of the Suit**</u>

     1.     This case involves long-term schemes by Defendants, SHARIF OMAR ("Sharif")

and SAMI OMAR ("Sami') (collectively, "Defendants"), to steal their sisters' interest in a

valuable family pharmaceutical company and the real estate upon which the pharmaceutical

manufacturing plant is located, and to loot two other family real estate investments located in

New York City to the financial detriment of all of the Plaintiffs. Over the past nine years,

Defendants (i) out-right stole Plaintiffs SHERIN AWAD's ("Sherin") and ASHA EL SHAIKH's

("Asha" and collectively with Sherin, the "Sisters") shares of stock in Liptis Pharmaceuticals

USA Inc. and Liptis Holding Corp. (collectively referred to herein as "Liptis"), and (ii)

misappropriated over $20,000,000 in cash from two other entities owned by the Plaintiffs, New

Life Holding Corp. ("New Life") and Omar Holding Corp. ("Omar Holding"), by diverting,

commingling and misappropriating the proceeds from various loans secured by mortgages on the properties owned by New Life and Omar Holding.

2.    For many years prior to 2009, Lotfi Omar ("Lotfi"), the Omar family patriarch and father of Plaintiffs, Sherin Awad and Asha El Shaikh (the "Sisters"), and the Defendants, owned and operated a family retail pharmacy known as Leptis Drugs at 1612 Westchester Ave, Bronx, New York (the "Bronx Property").[1] Lotfi purchased the Bronx Property in 1980 through his real estate investment entity, Omar Holding. Sherin and Asha both obtained their pharmacist licenses and worked alongside their father, Lotfi, at Leptis Drugs for many years. Sherin's husband, Hesham Awad, worked alongside Lotfi as a manager in the store for over sixteen years.

3.    Upon retiring from Leptis Drugs in 2009, Lotfi turned over control of the Bronx Property to the Defendants, the two elder sons of the family. Soon after, Defendants leased the building on the Bronx Property, where Leptis Drugs operated, to Walgreens Company. However, in order to induce Walgreens to lease the premises, Defendants committed the Sisters to work for Walgreens as pharmacists for two years, in order to facilitate the transition from Leptis Drugs to Walgreens. Because of the close family relationship between the Sisters and Defendants, and the Sisters' dependence upon Defendants, who assumed control of the family businesses upon the retirement of Lotfi, the Sisters acquiesced to the Defendants' demands and worked for Walgreens for several years thereafter.

4.    In or about August 2008, Sami and the Sisters purchased the property at 110 Red Schoolhouse Road, Spring Valley, New York (the "Liptis Property") through an entity they formed called Liptis Holdings, LLC, and, through loans secured by the Liptis Property, re-

---

[1]  The parties herein are Egyptian by descent and faithful to the Islam religion, adhering to the religious, cultural and traditional roles among Muslim family members, where women are often expected to be obedient wives and mothers staying within the family environment and men are expected to be protectors

developed the existing building into a pharmaceutical and nutraceuticals manufacturing plant and corporate offices for Liptis Pharmaceuticals USA, Inc.[2] The shares of stock for Liptis Holdings were divided between Sisters and Defendant Sami, with Sami receiving a forty-five (45%) percent interest, Sherin receiving a forty (40%) percent interest, and P Asha receiving a fifteen (15%) interest. Defendant Sharif was not included among the family shareholders because of his bad credit. The shares of stock of Liptis Pharmaceuticals USA had previously been gifted by Lotfi to Sami, Sherin and Asha in or about 2006, in the same or similar percentages.

5. Since the commencement of its operations at the Liptis Property, Liptis Pharmaceuticals USA, Inc. was managed and operated solely by Defendants.

6. Defendants, under traditional and cultural tenants of Islam, and as the sons of Lotfi, assumed the leadership role among the Parties. Because of this family structure, and because Plaintiffs thereupon relied upon Defendants to manage and operate the family businesses, including Omar Holding, New Life and Liptis, and to use, at all times, the highest level of care and concern for the well-being of Plaintiffs, Defendants owed to Plaintiffs a fiduciary duty of undivided and undiluted loyalty. Plaintiffs unquestionably relied upon Defendants to protect their interests and to manage and operate the family businesses for the benefit of Plaintiffs.

7. In or about 2009, Defendants, without the knowledge or consent of Plaintiffs, began to use the properties owned by Omar Holding and New Life as collateral to borrow money for their own self-interest and use. Defendants deceived Plaintiffs, through false pretenses, trickery and artifice, in order to cause Plaintiffs to sign corporate documents to obtain such loans,

and caretakers of the family, and men are considered to be the head of the family. *See e.g.,* West J Med. 2000 Nov; 173(5): 352–356 at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1071164/.

and/or forged Plaintiffs' signatures on such documents in order to deceive lenders into believing that all shareholders, including the Plaintiffs, consented to such loans.

8.     In or about 2011, Defendants, used false pretenses, trickery and artifice to cause the Sisters to sign shareholder transfer and other corporate documents without their knowledge or consent,[3] and/or forged the Sisters' signatures on such documents, caused the Sisters' ownership interests in the two Liptis entities to be transferred to the Liptis entities for little or no consideration, and then to subsequently purchase such shares from the Liptis entities in order to acquire the Sister's ownership interests in the two Liptis entities for little or no consideration, without the Sisters' knowledge or consent. The Sisters neither agreed to sell their shares of stock in Liptis, nor were they ever told by Defendants (or anyone else) that their shares were being transferred. The only notice given to the Sisters was buried in tax returns prepared by Defendants' accountants and sent to the Sisters well after the date upon which the tax returns were filed. Purportedly to cover their theft of the Sisters shares of stock of Liptis, Defendants made two payments of $33,000 and $80,000 to the Sisters, falsely telling them both that the payments were bonus distributions made to family members after the valuable Walgreens lease was signed, and as additional compensation for the Sisters agreeing to work in the Walgreens pharmacy for two years during the "transition period." The Sisters were also told that Sherin's share was larger than Asha's share, because Sherin's husband, Hesham Awad, had worked so many years for Lotfi in the Leptis pharmacy in the Bronx, and Sherin continued to work as the pharmacy's manager. At no time did Defendants tell their Sisters that the payments were for the purchase of their shares of stock of Liptis. Nevertheless, Defendants tricked the Sisters into

---

[2]  Liptis Pharmaceuticals USA, Inc. was originally formed by Lotfi in or about April 1995, under the name Liptis Laboratories, Inc.

signing the necessary transfer documents and/or forged such documents, and then instructed their accountants to make false entries in the Sister's tax returns to reflect the illegal transfers of the Sisters' shares of stock of the two Liptis entities.

9.      The Sisters did not discover Defendants' theft of their shares of stock in the Liptis entities until 2018, when Sharif stopped paying distributions to the Sisters and their mother, Hekmat Omar, and sought to terminate Hesham Awad's tenancy at the Bronx Property.

10.      In furtherance of their schemes to defraud the Plaintiffs, Defendants, through a series of thefts and fraudulent mortgages, and by submitting forged documents to the lending banks, misappropriated over $20,000,000 in equity from Omar Holding and New Life, by obtaining loans secured by the properties owned by Omar Holding and New Life for their own self-interest, in breach of their fiduciary duties owed to Plaintiffs. The proceeds from these loans were neither used for the benefit of Omar Holding or New Life, nor distributed to the Plaintiff-shareholders of those entities. In order to obtain these multi-million-dollar mortgage loans, Defendants deceived the Plaintiffs, through false pretenses, trickery and artifice, into signing shareholder agreements and forged and submitted to the lending banks false and misleading loan documents, personal financial statements, affidavits of title, affidavits of ownership, corporate resolutions, and leasing documents and information, using electronic wire transmissions and the U.S. mail to their attorneys and to the lending institutions and other related parties. In total, between 2009 and 2017, the Defendants burdened the New Life and Omar Holding properties with over $20,000,000 of mortgage indebtedness for their own self-interests, diluting a substantial portion of the Plaintiffs' equity interests in New Life and Omar Holding.

---

[3] Based upon their close familial relation and the customs and traditions of their religious beliefs under Muslim law and culture, the Sisters signed documents presented by Defendants without question or review.

11.    Additionally, for at least six years and through 2017, Defendant Sharif extorted money from Plaintiff Hesham Awad by demanding cash payments several times a year, under the implicit threat that he would terminate Hesham Awad's lease of the Bronx Property, if he did not comply.  In total, Sharif extorted over $70,000 from Hesham Awad.

12.    Upon information and belief, throughout their lives, Sami depended on Sharif for protection, medical care, love and support to the extent that Sami formed an allegiance to Sharif of unquestionable loyalty and deference. From 2009 through 2017, Sami was under the total control of Sharif and followed his directions and instructions without question. Together, they formed an enterprise for the purpose of financially benefitting themselves at the expense of the Plaintiffs, although that enterprise was controlled and directed by Sharif.

13.    Through this suit, Plaintiffs seek to hold Defendants and those who conspired with them accountable for their systematic misappropriation of the Sisters' shares of stock in the two Liptis entities, and a substantial portion of Plaintiffs' equity interests in New Life and Omar Holding. Because the Defendants' schemes and long-term pattern of illicit conduct involved the violation of certain federal statutes,[4] Plaintiffs bring this suit against the Defendants pursuant to the civil damages provisions of the Racketeering Influenced and Corrupt Organizations Act. 18 U.S.C. §§1961, et seq. ("RICO").  Further, Plaintiffs assert New York state law claims against Defendants for breach of fiduciary duties and conversion, which claims are redressable herein pursuant to the Court's supplemental jurisdiction.

**Jurisdiction and Venue**

14.    This Court has federal question jurisdiction under 28 U.S.C. §1331 and 18 U.S.C. §1964(a), and supplemental jurisdiction of state law claims under 28 U.S.C. §1367.

---

[4]  Mail fraud, 18 U.S.C. §1341; Wire fraud, 18 U.S.C. §1343; Bank fraud, 18 U.S.C. §1344 statutes.

15. Venue is appropriate in this Court because (a) one of the Defendants resides in this District and (b) most of the Defendants' acts and transaction constituting violations of RICO, and their related tortious conduct, occurred in this District.

**Parties**

16. Plaintiff HESHAM AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the son-in-law of Lotfi.

17. Plaintiff SHERIN AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the daughter of Lotfi.

18. Plaintiff AHMED AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the grandson of Lotfi.

19. Plaintiff JEHAN AWAD is an individual who resides at 47 Brookdale Avenue, New Rochelle, New York 10801, and is the granddaughter of Lotfi.

20. Plaintiff NABIL EL SHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the son-in-law of Lotfi.

21. Plaintiff ASHA EL SHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the daughter of Lotfi.

22. Plaintiff YUSUF ELSHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the grandson of Lotfi.

23. Plaintiff OMAR ELSHAIKH is an individual who resides at 122-05 82nd Road, Kew Gardens, New York 11415, and is the grandson of Lotfi.

24. Plaintiff MOHAMED OMAR is an individual who resides at 7073 Kennedy Blvd, North Bergen, New Jersey 07047, and is the brother of Lotfi.

25.     Upon information and belief, Defendant SHARIF OMAR is an individual who resides at 430 East 86th Street, Apt 15F, New York, New York 10028, and is the son of Lotfi.

26.     Upon information and belief, Defendant SAMI OMAR is an individual who resides at 2747 Paradise Road Unit 3103, Las Vegas, Nevada 89109, and is the son of Lotfi.

<u>**Facts**</u>

**<u>Background</u>**

27.     Liptis Pharmaceuticals USA, Inc. was a family owned business, originally formed by the parties' father, Lotfi Omar.[5]  Liptis Pharmaceuticals USA, Inc. engages in developing pharmaceuticals, nutraceuticals, and consumer healthcare products for customers worldwide. It offers products in various therapeutic areas, including cardiovascular, depression and generalized anxiety disorders, gastrointestinal and infectious disease, motion sickness/nausea, osteoarthritis, diabetes, aphrodisiacs and sexual dysfunction, liver disease, dermatology, anorectal disease, hyperlipidemia, women's health, musculoskeletal disorder, and nutrition; and products to relieve impotence and sexual dysfunction in men. The company is based in Spring Valley, New York. Liptis Holding Corp. is a single purpose entity that owns the real property where Liptis Pharmaceuticals USA, Inc. is located.

28.     Significantly, upon information and belief, Sharif intends to, and is in the process of obtaining, required licenses and regulatory approval for Liptis Pharmaceuticals USA to manufacture and distribute several medications that he is currently marketing in the Middle East

---

[5] Lotfi Omar has four children, Plaintiffs Sherin Awad and Asha El Shaikh, and Defendants Sami Omar and Sharif Omar.  Plaintiff Hesham Awad is married to Plaintiff Sherin Awad, and together they have two children, Plaintiffs Ahmed Awad and Jehan Awad.  Plaintiff Nabil El Shaikh is married to Plaintiff Asha El Shaikh, and together they have two children, Plaintiffs Yusuf ElShaikh and Omar ElShaikh.  Plaintiff Mohammad Omar is Lotfi Omar's brother.

through Liptis Pharmaceuticals Egypt ("Liptis Egypt"),[6] an affiliated entity, including an oral anti-diabetic medication that, upon FDA approval, will cause the value of Liptis Pharmaceuticals USA to increase significantly. Sharif, through theft, extortion and deception, now owns all of the shares of stock of both Liptis entities.

29.    On or about May 1, 2006, Lotfi gifted his ownership interest in Liptis Pharmaceuticals USA Inc. to Sami (45%), Sherin (40%) and Asha (15%). In our about August 2008, Sami, Sherin and Asha each acquired their aforementioned ownership interests in Liptis Holding LLC.

30.    In addition, all of the Plaintiffs own shares in Omar Holding and the Sisters own shares in New Life, in various amounts. Omar Holding has approximately sixteen (16) shareholders, consisting of Lotfi's wife, Hekmat Omar ("Hekmat"), his children and their spouses, his grandchildren, and his brother, Plaintiff Mohamed Omar. Currently, New Life has three (3) shareholders, consisting of the Sisters and Sharif. Prior to 2016, Hekmat and Sami were also shareholder of New Life.

31.    New Life is a single purpose entity that owns the real property and building located at 2162 Third Avenue, New York, New York (heretofore defined as the "Manhattan Property"). The Manhattan Property is a four-story commercial building containing at least five units.

32.    Omar Holding is a single purpose entity that owns the real property and building located at 1618 Westchester Avenue, Bronx New York (heretofore defined as the "Bronx

---

[6] Liptis Egypt was formed by Lotfi and subsequently operated and managed by Lotfi and Sharif. Upon information and belief, in or about 2017, through deceit, trickery and artifice, Sharif misappropriated Lotfi's majority ownership interest in Liptis Egypt by falsely representing to Lotfi that the transfer of Lotfi's ownership of Liptis Egypt was temporary, in order for Sharif to obtain financing for Liptis Egypt. However, after the transfer, Sharif ousted Lotfi from the management and control of Liptis Egypt, and otherwise cut him off financially. Upon further information and belief, a court in Egypt recently voided

Property").  The Bronx Property is improved with a one-story commercial building containing nine units.

33.     Upon information and belief, from in or about 2009 through the date hereof, Defendants commingled the income from Liptis, Omar Holding and New Life.

34.     During the period from in or about 2011 through 2017, the Defendants made certain distributions of the commingled income from Liptis, Omar Holding and New Life to themselves, their Sisters and their mother, Hekmat. However, Defendants did not cause the entities to pay the distributions to all of the shareholders of those entities as ordinary dividends. Upon information and belief, in order to exclude many of the shareholders from the distributions from those entities, and to direct the income to only Sharif, Sami, Hekmat, Sherin and Asha, Defendants caused the distributions to be made as wages, even though Hekmat, Sherin and Asha were not employed by any of those entities. This scheme also had the collateral consequence of providing the entities that paid the distributions as wages with tax deductions that they would not have received if the distributions were made as ordinary dividends. Furthermore, this scheme was entirely concocted by Defendants without any of the Plaintiffs knowledge or consent.

## The Overall Fraudulent Schemes

35.     Defendants' fraud consists of schemes to steal their Sisters' ownership interests in the Liptis entities, and the Plaintiffs' valuable investments interests in Omar Holding and New Life. In furtherance of the schemes, Defendants, through false pretenses, trickery and artifice, and/or by out-right forgeries, obtained and used fraudulent shareholder agreements, stock transfer documents, personal financial statements, affidavits of title, affidavits of ownership, corporate documents, leasing documents and bank loan documents in order to steal their Sisters'

---

the transfer of Lotfi's interest in Liptis Egypt to Sharif on the grounds of fraud, deceit and

interest in the Liptis entities and to misappropriate tens-of-millions of dollars from Omar Holding and New Life. Through these malicious schemes, between 2009 and 2017, Defendants misappropriated their Sisters' shares of stock in the two Liptis entities, and looted the real estate investments owned by Omar Holding and New Life through a series of fraudulent mortgage loans for their own self-interests.

36.    The Sisters never agreed to sell their shares of stock in Liptis to anyone or to any entity. At the direction of Sharif, Sami, through false pretenses, trickery and artifice, caused his Sisters to sign stock transfer documents without their knowledge, including stock purchase agreements and other related transfer documents to convey their shares of stock of the two Liptis entities to those Liptis entities for little or no consideration, so that Defendants could acquire those shares of stock from the Liptis entities. The Sisters' shares of stock of the Liptis entities were stolen by the Defendants from the Sisters, without the Sisters' knowledge or consent, in 2011.

37.    As part of their scheme to steal the Sisters' shares of stock in Liptis, and to reflect the sales in the Sisters' tax returns, Defendants, through the use of the U.S. mail and/or national recognized wire services, made payments of $33,000 and $80,000 to Asha and Sherin, respectively, telling them both that the payments were distributions as and for additional compensation to the Sisters for agreeing to work in the Walgreens pharmacy for two years during the "transition period." The Sisters were also told that Sherin's share was larger than Asha's share, because Sherin's husband, Hesham Awad, had worked so many years for Lotfi in the Leptis pharmacy in the Bronx. At no time did Defendants tell their Sisters that the payments were for the purchase of their shares of stock of Liptis. Those representations made by

misrepresentations.

Defendants to the Sisters were knowingly false when made, and were relied upon by the Sisters to their financial detriment.

38.     Upon information and belief, in 2011, the property owned by Liptis had an approximate value in excess of $3,000,000, and the Liptis entities had an approximate total value in excess of $5,000,000.  At the time Defendants stole the Sisters' shares of stock in Liptis, they had a value substantially in excess of the amounts paid to the Sisters.

39.      In 2011, Defendants caused their accountants to fraudulently report in the Sisters' federal tax returns that the payments were for the purported sale of the Sisters' shares of stock of Liptis.

40.     Throughout their schemes, Defendants used a law firm based in Nassau County, New York (hereinafter, the "Law Firm LLC"),[7] either knowingly or unwittingly, to prepare and transmit, through the U.S. mail and/or nationally recognized wire services, fraudulent and misleading stock transfer documents, shareholder agreements, corporate records and resolutions, personal financial statements, affidavits of title, affidavits of ownership, leasing records and other financial records to the parties' accountants and to various lenders which relied upon those documents in lending tens-of-millions of dollars to Omar Holding and New Life, which loan proceeds were subsequently misappropriated by Defendants for their own personal use.

41.     Upon information and belief, as a result of Defendants' theft of the Sisters' shares of stock in 2011, by December 2011, Defendant Sami owned 45% of Liptis and Defendant Shari owned 55% of Liptis.

_____

[7] "Law Firm LLC" is a fictitious name for the non-party law firm which represented Defendants in matters related to Omar, New Life and Liptis. Upon information and belief, Lawfirm LLC facilitated and was an accomplice to Defendants' actions described herein. A member of Law Firm LLC appears on certain loan documents of Omar Holding as an office of Omar Holding. However, for purposes of this litigation, Plaintiffs are using the fictitious name "Law Firm LLC"

42.    Upon information and belief, through threats and extortion, Defendant Sharif subsequently coerced Sami to transfer all of his shares of stock of Liptis to Sharif. As a result, as of the date of this complaint, upon information and belief, Defendant Sharif is the sole shareholder and owner of the two Liptis entities.

43.    In addition, through brazen schemes of misrepresentations and fraud, and through the use of the U.S. mail and/or nationally recognized wire services, Defendants misappropriated over $20,000,000 of loan proceeds from New Life and Omar Holding, secured by mortgages against the real property owned by those entities.

44.    On or about May 1, 2009, Defendants fraudulently applied for a mortgage loan from Banco Popular, using the Bronx Property as collateral for the loan. Upon information and belief, the loan application submitted to Banco Popular for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

45.    In order to fraudulently induce Banco Popular to make the loan to Omar Holding, Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other forms required by and relied upon by Banco Popular to make the loan, and submitted other false and/or misleading documents to Banco Popular, including fraudulent leases. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or Banco Popular in order to mislead Banco Popular into agreeing to issue the mortgage loan to Omar Holding.

to avoid subjecting Law Firm LLC to any embarrassment, because, at this time, Plaintiffs do not know the full extent of Law Firm LLC's knowledge of Defendants' fraudulent scheme.

46.     On or about August 20, 2009, relying upon the false and misleading information and documents submitted by Defendants, Banco Popular approved the mortgage loan to Defendants. As a result of the fraudulently obtained loan, Defendants received $4,235,213.64 in proceeds from Banco Popular. That mortgage was then consolidated with prior mortgages, burdening the Bronx Property with a total mortgage indebtedness of $4,500,000.

47.     On or about March 1, 2012, Defendants fraudulently applied for a mortgage loan from Investors Bank, using the Bronx Property as collateral for the loan.  Upon information and belief, the loan application submitted to Investors Bank for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

48.     In order to fraudulently induce Investors Bank to make the loan to Omar Holding, Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other forms required by and relied upon by Investors Bank to make the loan, and submitted other false and/or misleading documents to Investors Bank, including fraudulent leases. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or Investors Bank in order to mislead Investors Bank into agreeing to issue the mortgage loan to Omar Holding.

49.     On or about June 12, 2012, relying on the false and misleading information and documents submitted by Defendants, Investors Bank approved the mortgage loan to Defendants. As a result of the fraudulently obtained loan, Defendants received $2,299,019.55 in proceeds from Investors Bank.  That mortgage was then consolidated with prior mortgages, burdening the Bronx Property with a total mortgage indebtedness of $6,552,000.

50.     On or about March 1, 2015, Defendants fraudulently applied for a mortgage loan from TD Bank, using the Bronx Property as collateral for the loan. Upon information and belief, the loan application submitted to TD Bank for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about Omar Holding and the Bronx Property, including bogus leases and inflated rent rolls.

51.     In order to fraudulently induce TD Bank to make the loan to Omar Holding, Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other forms required by and relied upon by TD Bank to make the loan, and submitted other false and/or misleading documents to TD Bank, including fraudulent leases. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or TD Bank in order to mislead TD Bank into agreeing to issue the mortgage loan to Omar Holding.

52.     On or about August 6, 2015, relying on the false and misleading information and documents submitted by Defendants, TD Bank approved the mortgage loan to Defendants.  As a result of the fraudulently obtained loan, Defendants received $4,899,840.77 in proceeds from TD Bank.  That mortgage was then consolidated with the prior mortgages.

53.     In total, Defendants have burdened the Bronx Property owned by Omar Holding with more than $11,400,000 of indebtedness as a result of the mortgage loans described herein, for their own personal gain and to the financial detriment of the Plaintiffs.

54.     In January 2017, Defendants burdened the Bronx Property with an additional $1,000,000 mortgage filed, upon information and belief, as additional collateral for a $1,000,000 loan made to Liptis Pharmaceutical USA, Inc. Defendants utilized their illegal ownership and

control of Liptis to facilitate this mortgage, by cross-collateralizing Omar Holding's property for Liptis Pharmaceutical USA, Inc.'s debt.

55.     In order to fraudulently induce Liptis Pharmaceutical USA, Inc.'s lender to make the aforesaid loan to Liptis Pharmaceutical USA, Inc., Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other forms required by and relied upon by the lender to make the loan, and submitted other false and/or misleading documents to that lender, including fraudulent leases pertaining to Omar Holding. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or the lender in order to mislead the lender into agreeing to accept Omar Holding as an additional mortgagor for the loan, and to issue the mortgage loan to Liptis Pharmaceutical USA, Inc.

56.     As a result of the fraudulent mortgages described herein, the Bronx Property is now encumbered with a $12,434,073 secured mortgage debt, and none of the proceeds were invested into the Bronx Property or shared with any of the Plaintiffs, as shareholders of Omar Holding.

57.     With regard to the Manhattan Property, upon information and belief, on or about July 1, 2009, Defendants fraudulently applied for a mortgage loan from ER Holdings, LLC, using the Manhattan Property as collateral for the loan. Upon information and belief, the loan application submitted to ER Holdings, LLC, for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about New Life and the Manhattan Property, including bogus leases and inflated rent rolls.

58.     In order to fraudulently induce ER Holdings, LLC to make the loan to New Life, Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other

forms required by and relied upon by ER Holdings, LLC to make the loan, and submitted other false and/or misleading documents to ER Holdings, LLC, including fraudulent leases. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or ER Holdings, LLC in order to mislead ER Holdings, LLC into agreeing to issue the mortgage loan to New Life.

59.     On or about October 20, 2009, relying on the false and misleading information and documents submitted by Defendants, ER Holdings, LLC approved the mortgage loan to Defendants, which used the Manhattan Property as collateral. As a result of the fraudulently obtained loan, Defendants received $1,100,000 in proceeds from ER Holdings, LLC. Upon information and belief, Defendants used $100,000 of the loan proceeds for construction expenses pertaining to the New Life property, and transferred the remaining $1,000,000 of the loan proceeds to Liptis Pharmaceuticals USA, Inc.

60.     On May 10, 2012, the New Life mortgage was assigned to Investors Bank. On May 24, 2012, the mortgage was consolidated with a new mortgage from Investors Bank, burdening the property owned by New Life with a total consolidated mortgage loan debt of $1,975,000. Upon information and belief, Investors Bank relied upon false documents and information conveyed by Defendants and/or Law Firm LLC, at Defendants specific instance and request, to Investors Bank, including the forged corporate resolutions and other fraudulent loan documents Defendants had submitted to ER Holdings, LLC, through the use of the U.S. mail and/or nationally recognized electronic wire services, in agreeing to accept and assume the assignment of the New Life mortgage from ER Holdings, LLC.

61.     On March 1, 2017, Investors Bank assigned the New Life consolidated mortgage, which at the time had a total outstanding debt of $1,762,177, to BankUnited, N.A. Upon

information and belief, BankUnited, N.A. relied upon false documents and information conveyed by Defendants and/or Law Firm LLC, at Defendants specific instance and request, to BankUnited, N.A., including the forged corporate resolutions and other fraudulent loan documents Defendants had submitted to ER Holdings, LLC and Investors Bank, through the use of the U.S. mail and/or nationally recognized electronic wire services, in agreeing to accept and assume the assignment of the New Life mortgage from Investors Bank.

62.    Upon information and belief, on December 1, 2017, Defendants fraudulently applied for a mortgage loan from BankUnited, N.A., using the Manhattan Property as collateral for the loan. Upon information and belief, the loan application submitted to BankUnited, N.A. for the mortgage loan contained false and inaccurate information pertaining to Defendants' authority to apply for the loan, and false and misleading financial information about New Life and the Manhattan Property, including bogus leases and inflated rent rolls.

63.    In order to fraudulently induce BankUnited, N.A. to make the loan to New Life, Defendants forged the signatures of Plaintiffs on certain shareholder resolutions and/or other forms required by and relied upon by BankUnited, N.A. to make the loan, and submitted other false and/or misleading documents to BankUnited, N.A., including fraudulent leases. Defendants used the U.S. postal service and/or the nationally recognized electronic wire services to transfer the fraudulent documents and information to Law Firm LLC and/or BankUnited, N.A. in order to mislead BankUnited, N.A. into agreeing to issue the mortgage loan to New Life.

64.    On or about March 6, 2017, relying on the false and misleading information and documents submitted by Defendants, BankUnited, N.A. approved the mortgage loan to Defendants, which used the Manhattan Property as collateral. As a result of the fraudulently obtained loan, Defendants received $7,987,822.43 in loan proceeds from BankUnited, N.A.  The New Life mortgage loans were then consolidated into a combined $9,750,000 mortgage.

65.     In total, Defendants have encumbered the Manhattan Property with more than $9,750,000 in mortgage loan indebtedness.  The Manhattan Property was used as collateral for the combined $9,750,000 mortgage lien, and little of the proceeds were invested into the Manhattan Property and none of the proceeds was shared with either of the Sisters or New Life shareholder/family members.

66.     In furtherance of their schemes to defraud Plaintiffs and the aforesaid lenders, Defendants relied upon the professional services of its attorneys, Law Firm LLC, who, either knowingly or unknowingly, facilitated the fraudulent transactions described herein, including (a) the preparation of false corporate resolutions, stock transfer documents and shareholder agreements that were forged by Defendants or obtained by Defendants through deceit, trickery and artifice, and (b) the preparation and transfer by U.S. mail and/or nationally recognized electronic wire services of false and misleading financial documents, corporate records and resolutions, personal financial statements, affidavits of title, affidavits of ownership, leasing documents and rent rolls required by and relied upon by the aforesaid lending banks to secure the mortgage loans described herein. Law Firm LLC, either knowingly or unknowingly, facilitated Defendants' conversion of the Sisters' ownership interests in the two Liptis entities, and the dilution of the Plaintiffs' ownership interests in New Life and Omar Holding.

67.     Plaintiffs did not discovery Defendants' wrongdoing, including the theft of the Sisters shares of stock in Liptis, and the fraudulent mortgage loans Defendants obtained for Omar Holding and New Life until 2018, because of (i) the Plaintiffs' deference to and reliance upon Defendants as the head of the Omar family; (ii) Defendants' deceit and misrepresentations to Plaintiffs that were reasonably relied upon by Plaintiffs; and (iii) Defendants' concealment of their wrongdoing from Plaintiffs.

68.     In total, Defendants have stolen over $20,000,000 from Plaintiffs, plus all of the Sisters' shares of stock of Liptis.

### As And For A First Claim For Relief
**(RICO Violations By The Defendants)**

69.     Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "68" above, as if the same were set forth fully hereat.

70.     Pursuant to 18 U.S.C. §1962(b), it is unlawful "for any person through a pattern if racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  Further, pursuant to 18 U.S.C. §1962(c), it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  In addition, pursuant to 18 U.S.C. §1962(d), it is unlawful "for any person to conspire to violate any of the provisions of subsections . . . (b), or (c) of [§1962]."

71.     The course of conduct described above constitutes violations by Defendants of §1962(b), (c) and (d) of RICO. The Defendants, from in or about 2009 through 2017, and Sharif thereafter, constituted an enterprise engaged in a pattern of wrongful conduct involving mail fraud, wire fraud and bank fraud (the "Predicate Acts") to enable Defendants to acquire the Sisters' interests in, and then maintain control over, Liptis, and to mortgage the real properties owned by Liptis, New Life and Omar Holding in order to obtain money for their own interests to the detriment of the Plaintiffs. Further, the Defendants combined together, by agreement and by their joint actions, for their own financial interests, under the control of Sharif, to engage in a pattern of wrongful conduct involving the Predicate Acts to conduct, participate, directly or indirectly, in the conduct of the conspiracy to allow Defendants to fully and completely control

of Liptis, Omar Holding and New Life, and thus plunder, pillage and loot the assets of Liptis, Omar Holding and New Life over the last ten (10) years. As a result of Defendants' wrongful conduct, the equity value of Liptis, Omar Holding and New Life has been substantially diminished to the Plaintiffs' detriment, and the Sisters' shares of stock and ownership interests in Liptis have been stolen.

**Predicate Acts**

72. <u>Mail Fraud</u>

(a) the Defendants participated in schemes or artifices to defraud or attempt to defraud the Sisters of their shares of stock and interests in Liptis, and to loot and dilute the Plaintiffs' ownership interests in Omar Holding and New Life;

(b) the Defendants, or someone associated with the schemes, including Law Firm LLC and/or Defendants' accountants, used the mails or caused the mails to be used, by placing or causing to be placed in an authorized depository for mail documents intended to be sent or delivered by the United States Postal Service, that included fraudulently obtained stock transfer documents pertaining to the Sisters' shares of stock of Liptis, and tax returns fraudulently indicating that the Sister had sold, conveyed and/or transferred their ownership interests in Liptis to another party, and shareholder agreements, corporate resolutions and other documents required by the aforesaid lenders to make the mortgage loans to Omar Holding and New Life; and

(c) the use of the mail was for the purpose of executing the schemes.

In that regard, the United States mails were used on a regular, continuous and systematic basis in connection with the implementation and execution of the schemes set forth above.

73. In connection with the scheme to defraud the Sisters of the shares in Liptis, and to defraud all of the Plaintiffs and to loot and dilute the Plaintiffs' ownership interests in Omar Holding and New Life, and to defraud the aforementioned lenders to make loans to Omar Holding and New Life, as set forth above. Defendants knew, must have known, or should have known, that the United States mails would be used in connection with some aspect of the furtherance of these schemes. In particular: Defendants used the mail to provide fraudulent

documents and information to Law Firm LLC, to the lenders, and to their accountants, in order to obtain the aforementioned loans, and/or to make fraudulent entries in the Sisters' tax returns for 2011 pertaining to their shares of stock and interest in Liptis, knowing that the accountants would use the mail to send such fraudulent tax returns to the Sisters.

74.    Wire Fraud

(a) the Defendants participated in schemes or artifices to defraud or attempt to defraud the Sisters of their shares and interests in Liptis, and to loot and dilute the Plaintiffs' ownership interests in Omar Holding and New Life;

(b) the Defendants, or someone associated with the schemes or artifices, including Law Firm LLC and/or Defendants' accountants, transmitted communications and/or documents that included fraudulently obtained stock transfer documents pertaining to the Sisters' shares of stock of Liptis, and tax returns fraudulently indicating that the Sister had sold, conveyed and/or transferred their ownership interests in Liptis to another party, and shareholder agreements, corporate resolutions and other documents required by the aforesaid lenders to make the mortgage loans to Omar Holding and New Life, by means of a telephone, computer or fax machine connected to interstate wires for the purpose of executing such schemes or artifices; and

(c) the Defendants, or someone associated with the schemes or artifices, including Law Firm LLC and/or Defendants' accountants, used a telephone, computer or fax machine connected to interstate wires willfully and with the specific intent to carry out some essential step in attempting to carry out the schemes or artifices to defraud or attempt to defraud the Sisters, and to loot and dilute the Plaintiffs' ownership interests in Omar Holding and New Life.

In that regard, the interstate wires were used on a regular, continuous and systematic basis in connection with the implementation and execution of the scheme to defraud the Sisters of their shares and interest in Liptis, and to defraud all of the Plaintiffs, and to loot and dilute the Plaintiffs' ownership interests in Omar Holding and New Life, and to defraud the aforementioned lenders to make loans to Omar Holding and New Life, as set forth above. In particular: Defendants used the interstate wires to provide fraudulent documents and information to Law Firm LLC, to the lenders, and to their accountants, in order to obtain the aforementioned loans, and/or to make fraudulent entries in the Sisters' tax returns for 2011 pertaining to their

shares of stock and interest in Liptis, and caused Law Firm LLC and their accountants to use the nationally recognized wire services to transmit documents and information to the aforesaid lenders, and to file such tax returns with the State of New York and the Internal Revenue Service.

75. <u>Bank Fraud</u>

    (a) the Defendants participated in a schemes or artifices to defraud or attempt to defraud financial institutions, namely the banks and lenders described above, by representing that they were authorized to secure mortgages, using the properties owned by New Life, Omar Holding and Liptis as collateral, and by submitting to the banks and lenders documents and information that they knew to be false and/or fraudulent;

    (b) the Defendants, or someone associated with the schemes, made use of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

    (c) the Defendants, or someone associated with the schemes or artifices, used the false and fraudulent representations, false and/or fraudulently obtained documents willfully and with the specific intent to carry out some essential step to carry out the schemes or artifices to defraud or attempt to defraud the financial institutions and Plaintiffs.

In that regard, the financial institutions were used on a regular, continues and systematic basis in connection with the implementation and execution of the schemes to defraud the financial institutions, by fraudulently securing mortgage loans that used the properties owned by Omar, New Life and Liptis as collateral, and thereby devaluing Plaintiffs' shares and interest in Omar, New Life and Liptis, as set forth above. In particular:

    (a) Defendants' mispresented to various banks and financial institutions that they were authorized to secure the mortgage loans, and by submitting to the banks and lenders documents and information that they knew to be false and/or fraudulent, thereby using the properties owned by Omar, New Life and Liptis as collateral for the mortgage loans, by means of fraudulent statements and documents; and

    (b) Defendants utilized false and fraudulent statements and documents to secure said mortgage loans and to withdraw over $20,000,000 from various banks

and financial institutions in proceeds for their own personal gain and to the financial detriment of Plaintiffs;

76.     Pattern of Racketeering Activity.  As described herein, the Defendants engaged in numerous acts of racketeering activity within ten years of each other. The Predicate Acts and other wrongful conduct of the Defendants described herein were related in the sense that they involved the same or similar purposes, results, participants, victims, and methods of commission, and did not involve isolated or sporadic events.  Further, there was continuity of conduct in that the Predicate Acts and other wrongful activities of the Defendants described herein extended over a consecutive period of time spanning at least an eight year period, included the theft of the Sisters' ownership interests in Liptis and the procuring of numerous bank loans involving both Omar Holding and New Life to the financial detriment of the Plaintiffs, and involved a pattern of wrongful conduct with the continuing wrongful activities of the Defendants.

77.     Enterprise.  Pursuant to 18 U.S.C. 1962(b), the Defendants associated together in order to engage in the pattern of racketing activity described herein to empower Defendants to acquire the Sisters' ownership interests in Liptis, and to obtain and maintain control over and misuse and abuse the affairs, assets and interests of Omar, New Life and Liptis, and to repeatedly obtain, create and/or use false, forged and unauthorized documents in order to fraudulently induce the aforesaid lenders into making unauthorized loans to Omar Holding and New Life, and then misappropriating the proceeds of such loans for their own financial benefit and to the financial detriment of the Plaintiffs, thereby forming an enterprise affecting interstate commerce within the meaning of 19 U.S.C. §1961(4).

78.     Further, pursuant to 18 U.S.C. §1962(c), Defendants, and other persons and entities not named as defendants herein, including Law Firm LLC and Defendants' accountants, have participated in an associational enterprise-in-fact affecting interstate commerce. The

associational enterprise was devoted to the wrongful conduct and fraudulent purpose of enabling Defendants to acquire the Sisters' ownership interests in Liptis, and to obtain and maintain control over and misuse and abuse the affairs, assets and interests of Omar, New Life and Liptis, and to repeatedly obtain, create and/or use false, forged and unauthorized documents in order to fraudulently induce the aforesaid lenders into making unauthorized loans to Omar Holding and New Life, and then misappropriating the proceeds of such loans for their own financial benefit and to the financial detriment of the Plaintiffs, over a ten year period. Defendants' conduct resulted in the substantial dilution of value of Liptis, Omar Holding and New Life, and thus, the inability of Plaintiffs to receive their interests in same. The enterprise has an ongoing organization and functions as a continuing unit. Defendants conducted the affairs of the enterprise through a pattern of racketeering activity described herein. Accordingly, the joining together by Defendants, and other persons and entities not named as defendants herein, including Law Firm LLC and Defendants' accountants, for the purpose of allowing Defendants: (a) to misappropriate the ownership and/or assets of Liptis, Omar and New Life, (b) to acquire and then maintain control over the affairs of same, and to (c) fraudulently induce the aforesaid lenders into making unauthorized loans to Omar Holding and New Life, and then misappropriating the proceeds of such loans for their own financial benefit and to the financial detriment of the Plaintiffs, constitutes an associated-in-fact "enterprise" within the meaning of 19 U.S.C. §1961(4).

79. In addition, the Defendants participated in varying capacities in the wrongful and fraudulent schemes described above to allow Defendants to (a) misappropriate the ownership and/or assets of Liptis, Omar Holding and New Life in fraud of Plaintiffs, (b) to acquire the Sisters' interests in, and then maintain control over, Liptis, and (c) to fraudulently induce the aforesaid lenders into making unauthorized loans to Omar Holding and New Life, and then

misappropriating the proceeds of such loans for their own financial benefit and to the financial detriment of the Plaintiff. The Defendants willfully associated themselves with the schemes set forth herein and willfully participated in such schemes. As such, Defendants, and those under their direction, committed numerous fraudulent and wrongful acts which constitute the predicate acts of mail fraud, wire fraud and bank fraud. The Defendants knew about and agreed to facilitate the schemes, and provided knowing and substantial assistance toward the accomplishment of these wrongful goals. In addition, the Defendants aided and abetted the Predicate Acts described herein, which were perpetrated by Law Firm LLC, either knowingly or unwittingly. Accordingly, pursuant to 18 U.S.C. §1962(d) and 18 U.S.C. §2, the Defendants are liable as principals and co-conspirators.

80. Injury. While some of Defendants' RICO violations may have occurred a number of years ago, the Defendants wrongful conduct did not give rise to a claim for relief under 18 U.S.C. §1964(c) until those violations resulted in an injury to Plaintiffs' business and property. Then, the RICO claim did not accrue until the Sisters learned that their shares of stock in Liptis were fraudulently transferred from their ownership and control, and that the equity value of Liptis, Omar Holding and New Life were substantially diluted by Defendants' actions in burdening the properties owned by Liptis, New Life and Omar Holding with tens-of-millions of dollars in mortgage loan indebtedness, and thus Plaintiffs suffered damages because they are not able to receive the value of their interests in same. As co-shareholders in Liptis, Omar Holding and New Life, and by reason of the fiduciary duties owed by Defendants to Plaintiffs, as described above, Defendants owed an independent and direct legal duty to Plaintiffs, the breach of which caused harm and damage to the business and property interests of Plaintiffs.

81. Further, although the fraudulent conspiracy described herein was directed primarily at Plaintiffs, the victim of the Defendants' fraudulent schemes and conspiracy were

both Plaintiffs and the financial institutions which loaned money to Defendants, based upon false and fraudulent pretenses.  Plaintiffs have been injured in their business or property by reason of a violation of 18 U.S.C. §1962.  Pursuant to 18 U.S.C. 1964(c), Plaintiffs are entitled to recover from the Defendants treble their actual damages, reasonable attorneys' fees and the costs and expenses of this action.

**As And For A Second Claim For Relief**
**(Breach of Fiduciary Duties)**

82.     Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "81" above, as if the same were set forth fully hereat.

83.     As co-shareholders and officers of Liptis, Omar Holding and New Life, and because of their close family relationship to Plaintiffs, and because Plaintiffs relied upon Defendants to manage and operate the family businesses, including Omar Holding, New Life and Liptis, and to use, at all times, the highest level of care and concern for the well-being of Plaintiffs, Defendants owed the Plaintiffs fiduciary duties of the highest magnitude, including:

(a) A duty of undivided loyalty;

(b) A duty to act in good faith in any matter relating to Liptis, Omar Holding and New Life;

(c) A duty to avoid self–dealing and to not profit at the expense of Plaintiffs;

(d) A duty of full disclosure, including a duty to correct and clarify any prior misstatements or omissions of material facts; and

(e) A duty to not misappropriate or otherwise use funds, assets and business opportunities of Liptis, Omar Holding and New Life for their personal use.

84.     The course of conduct set forth above constitutes breaches by Defendants of their fiduciary duties that they owed to the Plaintiffs, which proximately caused harm and damage to Plaintiffs, and as further alleged below and incorporated herein by this reference.

## As And For A Third Claim For Relief
### (Conversion of Shares of Stock)

85.     Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "84" above, as if the same were set forth fully hereat.

86.     Pursuant to their stock ownership, Plaintiffs Sherin and Asha each had clear legal ownership and right to possession of a 55% share in Liptis Pharmaceuticals USA Inc. and a 55% share in Liptis Holding LLC.

87.     Defendants wrongfully misappropriated the Sisters' shares of stock for their own benefit, in violation of the Sisters' property rights.

88.     As a proximate result of Defendants' acts of conversion, the Sisters have been deprived of their property rights and suffered damages in excess of $3,000,000, in an amount to be proved at trial.

89.     The aforementioned acts of Defendants were willful, wanton, malicious and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

## As And For A Fourth Claim For Relief
### (Unjust Enrichment)

90.     Plaintiffs repeat, reallege and reiterate each and every allegation contained in paragraphs "1" through "89" above, as if the same were set forth fully hereat.

91.     Defendants have stolen the shares of stock and ownership interests of the Sisters in the Liptis entities.

92.     Defendants have looted Omar Holding and New Life of tens-of-millions of dollars through mortgage loans obtained through fraud and deceit, and used such proceeds for their own benefit and have not distributed any portion thereof to Plaintiffs.

93.     Defendants have enriched themselves at the expense of, and to the detriment of, the Plaintiffs.

94.     It is against equity and good conscience to permit Defendants to retain the Sisters' shares of stock and ownership interests in the Liptis entities, and the tens-of-millions of dollars of mortgage loans they fraudulent obtained from Omar Holding and New Life to the detriment of Plaintiffs' interests in those entities.

95.     By reason of the foregoing, Defendants proximately caused harm and damage to Plaintiffs, as further alleged below and incorporated herein by this reference

**Damages**

96.     The reasonably foreseeable consequences of the Defendants' wrongful conduct as set forth above were not only the systematic diversion of assets, income and opportunities that belonged to Plaintiffs, but also the prospect that Liptis, Omar Holding and New Life will be rendered insolvent, so that Plaintiffs would no longer have the value of their interests and shares.

97.     Had the Defendants not engaged in the wrongful conduct set forth above, the Sisters would continue to own their shares in Liptis and maintain control over same. In addition, Defendants' would not have had the opportunity to substantially dilute the Plaintiffs' financial interests in, and the value of, Liptis, Omar Holding and New Life, by burdening the properties owned by Liptis, Omar Holding and New Life with over $20,000,000 of indebtedness. Plaintiffs' shares in interest are currently valued in the amount of at least $6,232,609.36 in Liptis, Omar Holding and New Life.  As a direct, proximate and consequential result of the Defendants' wrongful conduct, as set forth above, the value of Liptis, Omar Holding and New Life has been

substantially diluted, with no likelihood of any distribution to Plaintiffs of their interests and shares.

98.    Plaintiffs have been injured in their business and property, and have suffered direct, proximate and consequential damages as a result of the acts described above in an amount not less than (a) for Plaintiff HESHAM AWAD's interests, $578,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding + $70,000, which is the sum of money Defendant Sharif extorted from Hesham Awad), (b) for Plaintiff SHERIN AWAD's interests, $3,672,228.67 (40% of $3,750,000, which is the total value of Liptis + 4.398427% of $12,434,073.96, which is the total diminution in value of Omar Holding + 16.67% of $9,750,000, which is the total diminution in value of New Life), (c) for Plaintiff AHMED AWAD's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding), (d) for Plaintiff JEHAN AWAD's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding), (e) for Plaintiff NABIL EL SHAIKH's interests, $508,480.64 (4.0894131% of $12,434,073.96, which is the total diminution in value of Omar Holding), (f) for Plaintiff ASHA EL SHAIKH's interests, $2,734,728.67 (15% of $3,750,000, which is the total value of Liptis + 4.398427% of $12,434,073.96, which is the total diminution in value of Omar Holding + 16.67% of $9,750,000, which is the total diminution in value of New Life), (g) for YUSUF ELSHAIKH's interests, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding), (h) for OMAR ELSHAIKH's interest, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding), and (i) for MOHAMED OMAR's interest, $508,480.64 (4.089413% of $12,434,073.96, which is the total diminution in value of Omar Holding), plus interest from thereon from August 2009 to the date of judgment.  These damages include:

(a)      damages for the amounts that Plaintiffs which have been able to receive as shareholders in Liptis, Omar Holding and New Life but were prevented from doing so on the basis of Defendants' wrongful conduct as set forth above; and

(b)      Separate and independent damages in the amount of the collection expense damages for the attorneys' fees and other expenses incurred in connection with their unsuccessful efforts to enforce their claims against Defendants. Within the last two years, Plaintiffs' collection expense damages are in excess of $100,000.

99.      In addition, because the wrongful acts of the Defendants as described above were willful, intentional and malicious, or with such a high degree of recklessness that the Defendants knew, or must have known or should have known, that harm would likely result to the Plaintiffs, Plaintiffs seek an assessment of punitive damages against the Defendants in an amount not less than three times Plaintiffs' actual damages.

### Attorneys' Fees

100.      As a result of the acts described above, Plaintiffs have employed the undersigned attorneys to prosecute their cause. Pursuant to 19 U.S.C. §1964(c), Plaintiffs are entitled to recover reasonable attorneys' fees from the Defendants for trial of this cause, plus additional reasonable attorneys' fees for any further trials, hearings or appeals.

### PRAYER

Plaintiffs respectfully request:

(1) That Plaintiffs have judgment against Defendants, jointly and severally, for an amount not less than the sum of (a) Plaintiffs' actual damages' as set forth above; (b) statutory treble damages under 18 U.S.C. §1964(c); (c) punitive damages in an

amount not less than three time Plaintiffs' actual damages; (d) pre- and post-judgment

interest at the highest lawful rate; and (e) reasonable attorneys' fees; and

(2) That the Court grant to Plaintiffs an award of the costs and expenses of this action,

and such other, further and different relief to which they may be entitled.


**JURY DEMAND**

Plaintiffs request a trial by Jury.

Dated: New York, New York
February 25, 2019


        **BELKIN BURDEN WENIG**
        **& GOLDMAN, LLP**

    By: s/ Jay B. Solomon
        Jay B. Solomon, Esq. (JBS-3855)
        Attorneys for Plaintiffs
        270 Madison Avenue
        New York, New York 10016
        (212) 867-4466

JSOLOMON/13120.0003/2537158