

# Belkin Burden Wenig & Goldman, LLP
## ATTORNEYS AT LAW

270 Madison Avenue
New York, NY 10016
Tel 212. 867. 4466
Fax 212. 297. 1859

495 Post Road East
Westport, CT 06880
Tel 203. 227. 1534
Fax 203. 227. 6044

www.bbwg.com

Jay B. Solomon
*Partner*
212. 867. 4466 Ext 497
jsolomon@bbwg.com

May 24, 2019

**By ECF**
Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Perl Street
New York, NY 10007

        Re: Hesham Awad, *et. al.* v. Sharif Omar, *et. al.*
           Case No. 18-cv-10810 (NRB)

Dear Judge Buchwald:

  I am the attorney for the Plaintiffs in the referenced case. I respectfully submit this letter in response to Defendant Sharif Omar's ("Sharif") letter dated May 21, 2019, requesting that the Court strike the proposed Consent Decree filed by Plaintiffs on May 10, 2019 [ECF No. 35 – since stricken from the docket], and to respectfully request that the Court reconsider its order denying the entry of the Consent Decree and striking it from the docket.

  It is respectfully submitted that there was nothing procedurally improper or inappropriate with the filing of the proposed Consent Decree. As discussed in *Civil RICO: A Manual for Federal Attorneys* (2007)[1]:

> A consent decree is a voluntary agreement, subject to the court's approval, entered into by consent of the parties to a lawsuit to resolve a lawsuit. "The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). As the Supreme Court has explained, consent decrees have a "hybrid nature": [C]onsent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts. See *United States v. ITT Continental Banking Co.*, 420 U.S. 223, 235-237 (1975); *United States v. Armour & Co.*, 402 U.S. 673 (1971). . . . [C]onsent decrees "have attributes both of contracts and of judicial decrees," a dual character that resulted in different treatment for different purposes. *United States v. ITT Continental Banking Co., supra*, at 235-237, and n. 10. The question is not whether we can label a consent decree as a "contract" or a "judgment," for we can do both. Local No. 93, *Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986) ("Firefighters").

*Id.* at 157. Moreover, "a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction. Furthermore, consistent with this requirement, the consent

---

[1] Available at https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf.

decree must 'come within the general scope of the case made by the pleadings'. . . and must further the objectives of the law upon which the complaint was based." *Id.* at 160, *citing Firefighters*.

Thus, the use of a consent decree is not limited in any respect to government related parties. Rather, it is a judicious method of resolving claims in a civil case – the very manner in which I attempted to use it in this case. Here, through the proposed consent decree, Defendant Sami Omar appeared in the case, consented to the jurisdiction of the Court, and agreed (like a contract between the parties) to provide material assistance to the Plaintiffs, and, most importantly, agreed that he will "at all times [be] fully and faithfully honest and truthful in regard to the foregoing." [Proposed Consent Decree ¶ 2] In return, Plaintiffs agreed to conditionally release him from liability for any wrongs he committed against them in regard to the allegations set forth in the FAC. Thus, the proposed Consent Decree was offered in the manner in which it was intended to be used – as an expeditious and judicious vehicle for resolving federal claims between the parties, and further, by promoting justice through truthful testimony. There is absolutely no basis for Mr. Campisi to cry foul – which is evident by the complete lack of any support for his protests and propositions. Indeed, as a non-party to the agreement, I question his standing to even challenge its entry.

Respectfully, it appears that the Court may have been swayed by the hollow rhetoric espoused in Mr. Campisi's letter. Those allegations are entirely false. I have confirmed directly through Sami Omar that Sharif was and remains the driving force behind the fraud that he had, has and continues to impose upon his family members. Moreover, as will be further demonstrated in response to Defendant's motion to dismiss, neither the Statute of Limitations nor the Private Securities Litigation Reform Act will pose any obstacle to the Plaintiffs' prosecution of their claims against Sharif. His theft of two of the Plaintiffs' shares of stock in Liptis Pharmaceuticals is but one small component of his long-term malfeasance, which continued by the looting of the family real estate businesses through at least 2017, and continues, to date, through shareholder oppression tactics.[2] It is respectfully submitted that the proposed Consent Decree was proper, and should be reconsidered by the Court.

Thank you for your consideration of this matter.

Respectfully submitted,

Jay B. Solomon

cc: Philip J. Campisi, Jr., Esq.

---

[2] Sharif, who now alone controls the families' two real estate investments, refuses to make any distributions to the family shareholders; yet, he is causing huge income tax liabilities to be passed through to them for accumulated (though undistributed) income.