# EXHIBIT 1

STOCK PURCHASE AGREEMENT, made as of the 30th day of December, 2011 (the "Effective Date"), by and between **SHERIN OMAR A/K/A SHERIN AWAD** ("Sherin"), **ASHA OMAR A/K/A ASHA EL-SHAIKH** ("Asha") and **LIPTIS PHARAMCEUTICALS USA, INC.** (the "Buyer"). For the purposes of this Agreement, each of Sherin and Asha may be referred to as a "Seller" and collectively as the "Sellers".

## RECITALS

**WHEREAS**, Sherin is the owner of four hundred (400) shares of Common Stock of the Buyer (the "Sherin Shares"), representing forty percent (40%) of the issued and outstanding capital stock of the Buyer;

**WHEREAS**, Asha is the owner of one hundred fifty (150) shares of Common Stock of the Buyer (the "Asha Shares" and together with the Sherin Shares, the "Shares") representing fifteen percent (15%) of the issued and outstanding capital stock of the Buyer; and

**WHEREAS**, the Sellers desire to sell, and the Buyer desires to buy, all of the Shares subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1. **Sale of Shares and Payment.** (a) For and in consideration of the Purchase Price (as hereinafter defined), effective as of 12:00 a.m. on the Effective Date, Sherin hereby sells and assigns to the Buyer, and the Buyer hereby purchases from Sherin, the Sherin Shares, and Asha hereby sells and assigns to the Buyer, and the Buyer hereby purchases from Asha, the Asha Shares.

    (b) The collective consideration payable to the Sellers for the Shares is the aggregate sum of One Hundred Ten Thousand Dollars ($110,000) (the "Purchase Price").

    (c) The Purchase Price is hereby allocated seventy two and 73/100 percent (72.73%) to the Sherin Interest and twenty seven and 27/100 percent (27.27%) to the Asha Interest. As such, ~~simultaneous with the execution and delivery of this Agreement,~~ the Buyer shall pay Eighty Thousand Dollars ($80,000) to Sherin in exchange for the Sherin Shares and Thirty Thousand Dollars ($30,000) to Asha in exchange for the Asha Shares.

    (d) The Purchase shall be paid by Buyer to Sellers within sixty (60) days from the date hereof.

2. **Representations of Seller.** Each of the Sellers, jointly and severally, represents and warrants to the Buyer as follows (the Sellers acknowledge and agree that the following representations and warranties are a material inducement to the Buyer's entering into this Agreement):

    (b) **Ownership of Shares.** Each Seller is the sole record and beneficial owner of her respective Shares, free and clear of all liens, pledges, security interests, encumbrances, restrictions, subscriptions, hypothecations, charges and claims of any kind whatsoever

1

2433216.2

(collectively, "Liens"). Each Seller has the absolute and unqualified right to transfer her respective Shares to the Buyer pursuant to the terms of this Agreement.

(c) **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Sellers to enable either of them to enter into and carry out this Agreement and the transactions contemplated hereby.

(d) **Authority; Binding Nature of Agreement**. Each of the Sellers has the power to enter into this Agreement and to carry out her obligations hereunder. This Agreement constitutes the valid and binding obligation of the Sellers and is enforceable in accordance with its terms.

(e) **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by each of the Sellers with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

(i) result in the creation of any Lien upon the Shares;

(ii) violate any judgment, order, injunction, decree or award against, or binding upon, either of the Sellers;

(iii) violate or otherwise breach the terms of any agreement or understanding, written or oral, to which either of the Sellers is a party or is otherwise bound; or

(iv) violate any law or regulation of any jurisdiction relating to either of the Sellers.

3. **Representations of Buyer**. The Buyer represents and warrants to the Seller as follows (the Buyer acknowledging and agreeing that the following representations and warranties are a material inducement to the Seller's entering into this Agreement):

(b) **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Buyer to enable it to enter into and carry out this Agreement and the transactions contemplated hereby.

(c) **Authority; Binding Nature of Agreement**. The Buyer has the power to enter into this Agreement and to carry out its obligations hereunder and thereunder. This Agreement constitutes the valid and binding obligation of the Buyer and is enforceable in accordance with its terms.

(d) **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by the Buyer with any of the provisions hereof or thereof, nor the consummation of the transactions contemplated hereby, will:

(i) violate any judgment, order, injunction, decree or award against, or binding upon, the Buyer;

(ii) violate or otherwise breach the terms of any agreement or understanding, written or oral, to which the Buyer is a party or is otherwise bound; or

(iii) violate any law or regulation of any jurisdiction relating to the Buyer.

4. **Survival of Representations**. The representations and warranties of the Sellers and the Buyer contained in this Agreement shall survive the execution and delivery hereof.

5. **Amendment**. Neither this Agreement nor any term or provision hereof may be changed, waived, discharged, or terminated orally, or in any manner other than by an instrument in writing signed by the party against whom the enforcement of the change, waiver, discharge, or termination is sought.

6. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the respective parties and their successors, assigns, heirs and personal representatives.

7. **Counterparts; Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. Signatures transmitted herein via facsimile or other electronic image shall be deemed original signatures.

8. **Entire Agreement**. This Agreement constitutes the entire understanding between the parties with respect to its subject matter and supersedes any previous written or oral agreement with respect thereto. The parties hereto acknowledge and agree that no review, examination or investigation made by any of the parties or their respective representatives shall limit or affect any representation or warranty made by any of the parties in, or otherwise relieve any of the parties from any liability under, this Agreement.

9. **Governing Law**. This Agreement is made under and shall be construed in accordance with the laws of the State of New York applicable to contracts made and performed within the State of New York.

10. **Notices**. Any and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement shall be deemed to have been duly given or made for all purposes when hand delivered or sent by certified or registered mail (return receipt requested and postage prepaid), overnight mail or courier, or facsimile (receipt confirmed) as follows:

If to the Buyer, at:

Liptis Pharmaceuticals USA, Inc.
110 Red Schoolhouse Road
Spring Valley, New York 10977
Attention: Sami Omar, President
Facsimile Number: 1-845-627-0364
with a copy to:

Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, New York 11554
Attention: Fred Skolnik, Esq.
Facsimile Number: (516) 296-7111

3

2433216.2

If to Sherin, at:
47 Brookdale Avenue
New Rochelle, NY 10801


If to Asha, at:
122-05 82 Road
Kew Gardens, NY 11415


or at such other address as any party may specify by notice given to the other party in accordance with this Section 10.

11. **Representation by Counsel; Interpretation**. Each party acknowledges that she or it has been represented by counsel, or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived by the parties. The provisions of this Agreement shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

12. **Construction**. The headings or captions in this Agreement are for convenience of reference only and do not in any way modify, interpret or construe the intent of the parties or affect any of the provisions of this Agreement. Words and phrases used herein in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender, unless the context requires otherwise.

**[Remainder of page intentionally left blank. Signature page follows.]**

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**SELLERS:**

_____
Sherin Omar a/ka/ Sherin Awad

_____
Asha Omar a/k/a Asha El-Shaikh

**BUYER:**

**LIPTIS PHARMACEUTICALS USA, INC.**

By: _____
Sami Omar, President