UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HESHAM AWAD, SHERIN AWAD, AHMED
AWAD, JEHAN AWAD, NABIL EL SHAIKH,
ASHA EL SHAIKH, YUSUF ELSHAIKH,  18 Civ. 10810 (NRB)
OMAR ELSHAIKH and MOHAMED OMAR,

                        Plaintiffs,

    -against-

SHARIF OMAR and SAMI OMAR,

                        Defendants.
-----------------------------------------------------------------x

## DECLARATION OF SHERIN AWAD AND ASHA EL SHAIKH IN OPPOSITION TO DEFENDANT SHARIF OMAR'S MOTION TO DISMISS COMPLAINT

We, Sherin Awad and Asha El Shaikh, pursuant to 28 U.S.C. § 1746, each, separately and jointly, declare the following to be true and correct under penalty of perjury:

1. We are plaintiffs in this action. We submit this declaration in opposition to the motion by defendant, Sharif Omar ("Sharif"), to dismiss the first amended complaint ("FAC") in the above captioned action.

2. Sharif is our brother. We are greatly pained by the deception and theft that Sharif has perpetrated on us and upon our other family members. We are also pained that we have been compelled to sue Sharif in a court of law.

3. We and our other family members are devout Muslims. We adhere to the customs and practices of Islamic law. One of the most important doctrines of Islamic law is that the family is of paramount importance, and that we should honor and care for our parents in their

later years. Another important doctrine of Islamic law is that women are caregivers in charge of the home, and men are responsible for the family's financial needs. This is how we were raised and how we have always interacted as a family. Sharif, by his treacherous acts, has brought shame upon us all.

4. When our parents transferred the family businesses to their four children (Sharif, Sami and us) and to our respective children, and the four of us pursued the development of the Liptis Pharmaceutical plant in Spring Valley, New York, we, as a family, were an investment group, dependent upon our two brothers, Sharif and Sami, to manage and operate those businesses and to protect our financial investments.

5. Sharif, as the eldest son, was the head of our family, second only to our father, Lotfi, who is a successful pharmacist and businessman. When Lotfi moved to Egypt in the mid-2000's to open Liptis Egypt, we turned to Sharif and Sami to manage the family investments and to protect our financial interests.

6. For more than twenty years, Lotfi owned and managed S-A Drug Corp. under the name "Leptis Drugs," a pharmaceutical business in the Bronx, New York. He formed Omar Holding Corp. in 1980 and acquired the real properties located on Westchester Avenue, between Morrison Avenue and Stratford Avenue, in the Bronx, New York (the "Bronx Property"), where Leptis Drugs maintained its business until 2008. Soon after, he acquired the commercial property located at 2162 Third Avenue and 118th Street, New York, New York (the "Manhattan Property"). Lotfi paid for our education and enabled us to become pharmacists, as well. We both worked at Leptis Drugs for many years, alongside Lotfi, Lotfi's brother, Mohamed Omar, and Sherin's husband, Hesham Awad, who helped manage the store.

7. In or about 2002, our parents divorced. As part of the property settlement between them, Lotfi transferred the Manhattan Property to our mother, Hekmat. For purposes of the transfer, in or about August 2002, Lotfi formed New Life Holding Corp. ("New Life"), for which our mother, Hekmat was the sole shareholder, until in or about 2008, when she transferred 52% of her ownership of New Life to her four children, with the sons (Sharif and Sami) receiving two shares for each share given to us (in accordance with Islamic law and tradition). Then, in or about 2016, Hekmat transferred her remaining shares of New Life to her four children. In addition, since 2004 Hekmat, loaned New Life over $400,000 in order to repair damage to the building. This loan and the transfer of her shares of New Life to her children were made with the understanding and agreement that Sharif and Sami would support her for the rest of her life – as is also custom under Islamic law. However, in 2018, Sharif completely cut our mother off and has not paid any moneys to her in over a year. She has no other income to support her now.

8. In the years leading up to Lotfi's retirement from Leptis Drugs, he transferred all of his shares of stock of Omar Holding to the all of us and our children. Sharif and his family, and Sami were given the controlling interest in Omar Holding, and the rest of the shares were divided among our two families and our uncle, Mohamed Omar. Lotfi moved to Egypt to manage Liptis Egypt and left Sharif and Sami in charge of the family businesses in the United States.

9. In early 2009, Sharif and Sami sold the Leptis Drugs business to Walgreens. Sharif, who had taken over the management of the property, headed the negotiations for the lease for the Walgreens store at the Bronx Property, which was signed in February 2009. Sharif told us that in order to make the Walgreens deal, we both had to commit to work as pharmacists for Walgreens at the Bronx Property for at least two years. We were not given a choice. Sharif told us that if we

did not agree, we would lose the Walgreens deal. Because Sharif was the eldest son and assumed management and control of the family businesses, we obeyed without question.

10. Around this time, the Omar family also started a nutraceutical manufacturing and distribution business under the name Liptis Pharmaceutical USA, LLC. ("Liptis Pharmaceutical USA"). This business venture was initially started by Lotfi in or about 1995, when he formed Liptis Laboratories, Inc., to sell nutraceuticals in the United States. Liptis Laboratories, however, outsourced all manufacturing to other companies. After several years of trying to make a profit solely with domestic sales, Lotfi expanded the business of Liptis Laboratories to the Middle East, which proved to be much more profitable. This was the impetus for Lotfi to start Liptis Egypt and to eventually pursue his successful pharmaceutical and nutraceutical business in Egypt.

11. When the family decided to expand and further develop the Liptis nutraceutical business in the United States, we formed Liptis Holding LLC ("Liptis Holding" and together with Liptis Pharmaceutical USA, "Liptis") in August 2008, in order to purchase the land that Sharif and Sami had located in Spring Valley, New York, for a nutraceutical manufacturing and distribution center. Also at this time, we changed the name of our father's U.S. pharmaceutical company, Liptis Laboratories, Inc., to Liptis Pharmaceuticals USA, LLC, which became the operating entity for the newly expanded nutraceutical business in the US.

12. There was an issue with Sharif owning shares in Liptis because we were applying for an SBA loan, and apparently he had some issues that would have disqualified Liptis from getting that loan. The shares for both Liptis entities were therefore supposed to be divided as follows: fifty (50%) percent to Sami; and twenty-five (25%) percent each to Sherin and Asha (Sami getting two shares for each share given to each of us, in accordance with Islamic law and

4

custom).[1] However, Sharif objected to this allocation for the ownership for Liptis, because he said his share of the Liptis entities would eventually be transferred to him, and, in the meanwhile, he did not want to give anyone else the majority controlling interest in the Liptis companies (not even Sami). He also claimed that he wanted to set up the ownership structure in a way that would make it easiest to transfer the double share that he believed he was entitle to, to himself. As a result, the allocation of the shares for the two Liptis entities was changed to the following percentages: forty-five (45%) percent to Sami; forty (40%) percent to Sherin; and fifteen (15%) percent to Asha, with the understanding that eventually, Sharif and Sami would have approximately seventy (70%) percent of the Liptis entities, and we would have approximately fifteen (15%) percent, each.

13. We did not know that there was any subsequent transfer of the Liptis shares – in particular, the outright theft of our shares by Sharif, until July 2018, when we happened to ask Sami about Liptis, and he revealed to us, for the first time, that we were no longer shareholders of the Liptis entities. We were dumbfounded, and could not understand how this was possible. Sami explained: In 2011, when Liptis needed financing for equipment and operations, he brought us a stack of loan documents required by the lending bank for the loan along with other innocuous paperwork. Sami took the pages from this bogus stock transfer agreement and whatever else his lawyers provided to him for the transfer, and concealed them within the stack of loan documents. He then had the stack of documents brought to us at Walgreens, while we were busy working and otherwise distracted, and had us sign the documents under false pretenses. Because we unquestionably trusted Sami and Sharif, it was a perfect (albeit devious) plan – there was little chance that we would discover the fraud. The plan worked. We never

---

[1] Lotfi gave Sharif a 40% ownership interest in Liptis Egypt, partly because of the allocation of the shares to Sami and us for the U.S. Liptis entities.

knew about the theft of our shares until Sami revealed it to us in July 2018. Over the years, we received checks from Liptis and Omar, and Sami would always say that this was how Sharif wanted to distribute income from the various family investments. Again, we unquestionably trusted Sami and Sharif – there was no reason that we would not.

14. In late 2011 or early 2012, we received checks from Liptis in the amounts of $80,000 to Sherin and $30,000 to Asha. Sami told us that these were the bonus checks that he and Sharif had promised to us for working for Walgreens for two years at the Bronx Property. We had no reason to suspect otherwise.

15. We never entered into a transaction to sell our shares of Liptis to Sharif or anyone else. Those shares of Liptis stock were stolen from us by family members whom we indisputably trusted.

16. In retrospect, perhaps the only way we could have learned that we no longer owned Liptis shares would have been from our tax returns. However, Sami and Sharif's accountants prepared all of the tax returns, which were always prepared after lengthy extensions. We never received K-1 statements, and, when ultimately sent to us, we neither had any reason to review those tax returns, or would we understand what was in them. We did not have our own accountants. Sharif and Sami took care of all things related to the preparation and filing of the family business and personal tax returns. The accountants would send us forms to sign permitting the accountants to file the tax returns directly with the IRS; without copies of the tax returns. Then, months later, we received an envelope with a copy of a tax return that had been filed months before. We did not review them, because we trusted our brothers and the family accountants they used, and frankly, there was little in the tax returns that we would have

understood. Sharif and Sami were supposedly protecting our interests – there was no reason to scrutinize the tax returns or question what Sharif and Sami were doing.

17. We have also since learned that Sharif and Sami tricked us into signing a bogus shareholder agreement for Omar Holding to make sure that Sharif had full and exclusive control over that investment, and, that effectively, we could not transfer our shares. Sami told us that he perpetrated this fraud in the same manner as the stock transfer agreement. He concealed signature pages among other routine documents and had a Liptis employee bring them to us while we were harried at work so there was little chance we would question what we were signing or realize the significant of the signature page secreted among other, innocuous documents brought to us during the fervor of work. It is still beyond our comprehension that our brothers could have perpetrated these frauds on us.

18. We were unaware that Sharif stole our shares of stock of the two Liptis entities until in or about July 2018.

19. We were also unaware that Sharif and Sami misappropriated approximately $20,000,000 from Omar Holding and New Life through fraudulent bank loans, and then diverted those moneys for their own use, substantially diluting the value of these family investments, until we discovered Sharif's and Sami's fraud upon the Omar family in or about July 2018. We had no knowledge of the mortgage loans made by various banks to Omar Holding and New Life. We never consented to those loans, or knowingly signed any documents pertaining to those loans.

20. We were never consulted by Sharif or Sami as to how income would be distributed to us and other family members from Omar Holding, New Life and/or Liptis. Sharif made all decisions on how income was distributed, including sending us checks from the various companies over the years until 2018, when Sharif cut us off completely.

21. The Omar family investments and businesses were managed exclusively by Sharif and Sami until 2018, when Sharif ousted Sami and seized control of Liptis, Omar Holding and New Life. Now, Sharif is in control and exclusively managing each of the businesses.

22. Based upon the foregoing, we respectfully request that Sharif's motion to dismiss the FAC be denied in its entirety.

Executed on: July 23, 2019

_____
Sherin Awad

_____
Asha El Shaikh

JSOLOMON/13120.0003/2631160