

# Belkin Burden Wenig & Goldman, LLP

A T T O R N E Y S   A T   L A W

270 Madison Avenue
New York, NY 10016
Tel 212. 867. 4466
Fax 212. 297. 1859

495 Post Road East
Westport, CT 06880
Tel 203. 227. 1534
Fax 203. 227. 6044

www.bbwg.com

Jay B. Solomon
*Partner*
212. 867. 4466 Ext 497
jsolomon@bbwg.com

July 24, 2019

**By ECF**

Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re: Hesham Awad, *et. al.* v. Sharif Omar, *et. al.*
> Case No. 18-cv-10810 (NRB)

Dear Judge Buchwald:

On behalf of the Plaintiffs in the referenced case, I respectfully submit this letter in accordance with Rule 2.E.1. of Your Honor's Individual Practices to briefly address the arguments in support of the accompanying Memorandum of Law in Opposition to Defendant Sharif Omar's Motion to Dismiss.

## Background:

The parties are all related members of the Omar family. The dispute arises over Defendants' Sharif Omar ("Sharif") and Sami Omar ("Sami") (collectively, "Defendants") long-term scheme to defraud the Plaintiffs from their financial interest in the Omar family businesses and investments for their own pecuniary interests. Defendants' fraudulent scheme, spearheaded by Sharif's dictatorial influence over Sami, and the familial, religious and cultural influences the Defendants held over Plaintiffs, caused substantial financial injuries to Plaintiffs' equity interests in New Life Holding Corp. ("New Life"), Omar Holding Corp. ("Omar Holding"), Liptis Pharmaceuticals USA Inc. ("Liptis USA") and Liptis Holding Corp. ("Liptis Holding") (Liptis USA and Liptis Holding collectively "Liptis"), which comprise the Omar family businesses and investments, in breach of their fiduciary duties owed to Plaintiffs. Defendants accomplished this fraudulent scheme based on their association-in-fact enterprise (as heads of the Omar family investments and fiduciaries of Plaintiffs) to conduct a pattern of racketeering activity spanning for nine years. In the process, Defendants out-right stole Plaintiffs Sherin Awad's ("Sherin") and Asha El Shaikh's ("Asha") (collectively the "Sisters") shares of stock and ownership interests in Liptis, misappropriated over $20,000,000 in cash from Omar Holding and New Life, saddled the family investments with huge debt significantly diluting their equity interests, and cut-off the Plaintiffs from receiving any income from those investments. Accordingly, Defendants actually and proximately caused Plaintiffs to suffer injury to their business and property as a result of Defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity involving bank fraud, mail fraud, and wire fraud, that clearly and definitely damaged the Plaintiffs.

In 2018, Plaintiffs discovered the Defendants' fraudulent scheme and thefts, and have since pieced together the manner in which Sharif and Sami conducted this fraud in a concerted effort to deprive Plaintiffs of the benefits of their financial investments. Accordingly, Plaintiffs assert civil RICO claims against Defendants for relief under 18 U.S.C. § 1962, and related state law claims arising out of the same fraudulent transactions and occurrences.

**Plaintiffs Have Viable RICO Claims Against Defendants:**

Plaintiffs sufficiently plead a substantive RICO violation under 18 U.S.C. §1962(c) by pleading (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and that Plaintiffs suffered an injury to their business and property as a result.

Plaintiffs sufficiently plead a substantive RICO violation under 18 U.S.C. §1962(b), because (1) Defendants engaged in a pattern of racketeering activity for the purpose of acquiring an interest in or maintaining control of an enterprise, the Omar family businesses and investments, and their role as managers thereof; (2) Defendants in fact acquired an interest in and maintained control of the enterprise through a pattern of racketeering activity; and (3) Plaintiffs suffered an injury as a result of the acquisition or control, separate and apart from any injuries attributable to the individual predicate acts of racketeering.

Defendants, the ostensible fiduciaries of the Plaintiffs, in fact conducted a pattern of racketeering activity spanning nine years, from in or about 2009 through 2017, involving acts of mail fraud, wire fraud and bank fraud that were sufficiently related and continuous under the RICO requirements. Furthermore, Defendants' five predicate acts of bank fraud and multiple acts of mail fraud and wire fraud constitute (i) closed-ended continuity, because Plaintiffs have demonstrated 'a series of related predicates extending over a substantial period of time' of nine years, and (ii) open-ended continuity, because there remains a considerable threat of continued criminal activity by Sharif, who now, alone, controls the family investments and businesses.

Furthermore, Plaintiffs have adequately plead a pattern of racketeering activity against Defendants, including the theft of the Sisters' shares of stock in Liptis in 2011; their fraudulent mortgage loans procured using Omar Holding in 2009, 2012, 2015 and 2017; and their fraudulent mortgage loans procured using New Life in 2009, 2012 and 2017, all of which involved the violation of federal criminal statutes as discussed in the FAC.

Plaintiffs have standing to sue based on their special relationship with Defendants, which imposed on Defendants a fiduciary duty of highest degree of trust and fair dealing. "An exception to the rule that shareholders may not sue for harm inflicted upon the corporation is where there exists a "special relationship between the suing shareholder and the defendant creating a special duty, contractual or otherwise, other than that owed to the corporation." *Nordberg v. Lord, Day & Lord, 107 F.R.D 692, 698 (S.D.N.Y. 1985), quoting Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975). *See also, General Rubber Co. v. Benedict*, 2115 N.Y. 18 (1915) (Claim of principal shareholder of subsidiary corporation against director

for diminution of value of his shares.); *Matter of Auditore*, 249 N.Y. 335 (N.Y. Ct. of App. 1928) (Fiduciary who looted corporation liable to estate based upon independent duty of trust.); *Weiss v. Salamone*, 116 A.D.2d 1009 (4th Dept. 1986) (Promisor of note may assert lack of consideration based on breach of contractual and fiduciary duties where plaintiff's actions rendered shares of corporation valueless.).

Finally, the type of enterprise, the fiduciary relationship of the perpetrators, and the harm caused to the Plaintiffs are strikingly similar to the facts underlying the Second Circuit Court of Appeals' recent decision in *D'Addario v. D'Addario*, 901 F.3d 80 (2d. Cir. 2018).[1]

## Plaintiffs' Claims Are Not Time Barred:

Civil RICO claims have a four-year statute of limitations. Under the injury discovery rule, a RICO claim that is filed within four years from when the plaintiff discovers its injury is not time-barred. *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 60 (2d Cir. 1998). In the case at bar, the Plaintiffs did not discovery Defendants' fraudulent schemes and that they were injured until 2018, well within the RICO limitations period. Moreover, under the rule of separate accrual, each time a plaintiff discovers or should have discovered an injury caused by a defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988). Here, again, Plaintiffs did not discover their injuries until 2018, well within the RICO limitations period. Finally, even the earliest claims against Defendants relating to the first fraudulently obtained mortgage loans, and their stealing of the Sisters' shares of stock of the two Liptis entities occurred within the ten (10) year period covered under RICO. *See Agency Holding v. Malley-Duff*, 483 U.S. 143 (1987). In this case, given the relationship of the parties, the dependence of Plaintiffs on Defendants, and Defendants' calculated efforts to hide their wrongdoing from Plaintiffs, a reasonable person of ordinary intelligence would not have discovered the existence of the fraud. Uncontroverted evidence does not establish that Plaintiffs were on inquiry notice before 2018.

Moreover, only isolated incidents of Defendants' fraud and theft occurred before November 2014, which would not put a reasonable person of ordinary intelligence on notice of RICO violations. To the contrary, Defendants' (i) 2015 fraudulent mortgage loan with TD Bank,

---

[1] In *D'Addario*, the Second Circuit held that plaintiff-appellant Virginia D'Addario adequately pleaded a RICO claim under 18 U.S.C. § 1962(c) against her brothers, David and Larry D'Addario, the co-executors of their father's Estate, and that the two brothers, as fiduciaries, "indisputably comprise[d] an association-in-fact" enterprise. *Id.* at 103. Moreover, Virginia's brother, David, was able to exert significant control over the entirety of the family business empire known as D'Addario Industries, where substantially all of the father's business assets lay within the Estate. *Id.* at 85-86. Furthermore, the complaint pleaded that David, as the "dictatorial" executor of the Estate, systematically looted the assets of his father's estate, and "ran the Estate as his personal piggy bank, conducting its affairs for his own financial benefit, both to the detriment of his sister Virginia and his mother's estate and in violation of his fiduciary duties and RICO." *Id.* at 87.

Belkin Burden Wenig & Goldman, LLP

which encumbered Omar Holding with $4,899,840.77 in debt (FAC ¶52), and (ii) 2016-2017 fraudulent mortgage loan with BankUnited, N.A., which encumbered New Life with $7,987,822.43 in debt (FAC ¶64), are both within the four-year statute of limitations.

**Plaintiffs' RICO Claim is Not Barred by the RICO Amendment:**

The Private Securities Litigation Reform Act (the "PSLRA") of 1995 amended RICO to provide that "no person may rely upon conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962," in order "to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim." 18 U.S.C. § 1964(c). Plaintiff's claims are not barred by the PSLRA, because Plaintiffs neither allege securities fraud, nor are Plaintiff's RICO claims actionable as securities fraud, since the claims involves theft, not the purchase or sale of securities. Defendants' scheme to trick the Sisters into signing purported transfer documents for their Liptis shares is defined under the common law as larceny by trick and fraud in the factum, rendering the transfer documents and the purported transaction void. Since there was no securities transaction, PLRSA is inapplicable.

**Conclusion:**

Based on the forgoing, Sharif's motion to dismiss should be denied. However, if there are any infirmities in the manner which Plaintiffs pleaded their claims against Defendants, or if the Court determines that Plaintiffs lack standing because the claims must be alleged derivatively on behalf of Omar Holding and New Life,[2] Plaintiffs respectfully request leave of court to file a Second Amended Complaint to correct such infirmities, including, but not limited to, (i) pleading fraudulent concealment as a tolling exception to the statute of limitations; (ii) further factual support evidencing the association-in-fact enterprise of Defendants, based upon their roles as heads of the Omar family and fiduciaries of the Plaintiffs; and (iii) casting the Plaintiffs' claims, in part, as derivative rather than personal.

Plaintiffs request oral argument on this motion in accordance with Rule 2.H. of the Court's Individual Practices.

Respectfully submitted,

Jay B. Solomon

cc: Counsel of Record (via ECF)

---

[2] It is respectfully submitted that if the Court determines that the claims alleged against Defendants must be asserted derivatively on behalf of Omar Holding and New Life, there will be no need to demand that the corporations bring such claims first, because Sharif alone controls the corporations, and any demand upon him to pursue such claims would obviously be futile.