UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
HESHAM AWAD, SHERIN AWAD, AHMED
AWAD, JEHAN AWAD, NABIL EL SHAIKH,
ASHA EL SHAIKH, YUSUF ELSHAIKH,
OMAR ELSHAIKH, and MOHAMED OMAR,

**MEMORANDUM AND ORDER**

       Plaintiffs,

18 Civ. 10810 (NRB)

    - against -

SHARIF OMAR and SAMI OMAR,

       Defendants.
--------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Sharif Omar moves to dismiss the first amended complaint (the "amended complaint") of Hesham Awad, Sherin Awad, Ahmed Awad, Jehan Awad, Nabil El Shaikh, Asha El Shaikh, Yusuf ElShaikh, Omar ElShaikh, and Mohamed Omar (collectively, "plaintiffs").[1]  The Court grants the motion for the reasons stated herein.

## BACKGROUND

Sharif Omar and Sami Omar (together, "defendants") are the brothers of Sherin Awad and Asha El Shaikh (together, the "sisters," and, collectively with defendants, the "siblings").

---

[1] Defendant Sami Omar, who appears pro se and has neither answered nor moved to dismiss plaintiffs' amended complaint, has apparently agreed to assist plaintiffs in exchange for their "agree[ment] not to enforce any monetary claims against him."  See ECF No. 36.  Accordingly, only Sharif brings the instant motion, which requests that the Court dismiss plaintiffs' amended complaint in its entirety.

1

First Am. Compl. ("FAC") ¶ 27 n.5.  Plaintiffs are the sisters, their husbands, their children, and their uncle.  FAC ¶ 27 n.5.

The amended complaint alleges that "throughout their lives, Sami depended on Sharif for protection, medical care, love[,] and support to the extent that Sami formed an allegiance to Sharif of unquestionable loyalty and deference."  FAC ¶ 12.  Moreover, "[f]rom 2009 through 2017, Sami was under the total control of Sharif and followed his directions and instructions without question."  FAC ¶ 12.

This dispute arises from plaintiffs' interests in various family-owned businesses.  Liptis Pharmaceuticals USA, Inc. ("Liptis USA") develops "pharmaceuticals, nutraceuticals, and consumer healthcare products for customers worldwide."  FAC ¶ 27. Liptis Holding Corp. ("Liptis Holding," and, together with Liptis USA, "Liptis") is a single-asset entity that owns the property on which Liptis USA is located in Spring Valley, New York.  FAC ¶ 27. As of 2009, when the incidents about which plaintiffs complain first occurred, Sami, Sherin, and Asha owned 45%, 40%, and 15%, respectively, of the stock of each of Liptis USA and Liptis Holding.  FAC ¶ 4.

New Life Holding Corp. ("New Life") and Omar Holding Corp. ("Omar Holding") are also single-asset entities.  FAC ¶¶ 31-32. New Life's asset is a four-story commercial building in Manhattan. FAC ¶ 31.  Prior to 2016, the siblings and their mother, Hekmat

Omar, owned all of New Life's equity. FAC ¶ 30. Omar Holdings' asset is a one-story commercial building in the Bronx. FAC ¶ 32. Plaintiffs are shareholders of Omar Holding. FAC ¶ 30. Prior to 2009, the siblings' father, Lotfi Omar, operated a pharmacy in Omar Holdings' commercial building, where he employed the sisters as pharmacists. FAC ¶ 2-3. In 2009, Lotfi retired and turned over management of Omar Holding's commercial property to defendants, who leased it to Walgreens. FAC ¶ 3. The sisters agreed to work for two years as pharmacists at Walgreens in order to facilitate the transaction. FAC ¶ 3.

Plaintiffs contend that "from in or about 2009 through 2017," defendants engaged in a "course of conduct" to "enable [them] to acquire the [s]isters' interests in . . . Liptis, and to mortgage the real properties owned by Liptis, New Life[,] and Omar Holding in order to obtain money for their own interests to the detriment of the [p]laintiffs." FAC ¶ 71.

Specifically, the amended complaint alleges that in 2011, "[a]t the direction of Sharif, Sami, through false pretenses, trickery[,] and artifice," misled the sisters into signing "shareholder transfer and other corporate documents" pursuant to which they sold their stock in Liptis USA and Liptis Holding to those entities "for little or no consideration." FAC ¶ 8. While the amended complaint does not elaborate on how Sami defrauded his sisters, it alleges that the sisters signed the documents "without

3

question or review" because of "their religious beliefs under Muslim law and culture[.]" FAC ¶ 8 n.3.

One of the documents was a Stock Purchase Agreement under which Sherin and Asha agreed to sell their Liptis USA stock to Liptis USA for $80,000 and $30,000, respectively, see Declaration of Annie P. Kubic, Ex. 1 (the "SPA") ¶ 1(c), which plaintiffs contend was substantially less than the stock was worth, see FAC ¶ 38. After the sisters signed the SPA, defendants allegedly wired or mailed the $80,000 and $30,000 to the sisters, FAC ¶ 37, but, in order to conceal their fraud, told them that the payments were "bonus distributions made to family members after the . . . Walgreens lease was signed," and for the sisters' agreeing to work there for two years, FAC ¶ 8.

The amended complaint alleges that after the sisters sold their stock, defendants purchased it from the Liptis entities "for little or no consideration." FAC ¶ 8. After defendants acquired the shares, Sharif allegedly "coerced" Sami "through threats and extortion" into giving Sharif all of his shares of Liptis USA and Liptis Holding. FAC ¶ 42.

The amended complaint also alleges that from 2009 through 2017, defendants defrauded various lenders into issuing mortgages on the properties owned by Liptis, New Life, and Omar Holding, and then misappropriated the proceeds. For example, the amended complaint contends that in May 2009, defendants submitted to Banco

4

Popular a "loan application . . . contain[ing] false and inaccurate information pertaining to [d]efendants' authority to apply for the loan, and false and misleading financial information, including bogus leases and inflated rent rolls," in order to "fraudulently induce Banco Popular" into issuing a $4.235 million mortgage on Omar Holding's property. FAC ¶¶ 44-46. This example typifies the amended complaint's allegations concerning the alleged mortgage frauds. Ultimately, the amended complaint asserts that defendants deceived Banco Popular, Investors Bank, TD Bank, ER Holdings, LLC, BankUnited, N.A., and an unnamed lender into issuing $21.5 million of mortgages that defendants allegedly misappropriated to the detriment of plaintiffs' interests in New Life and Omar Holding. See FAC ¶¶ 44-65.

Plaintiffs contend that during the commission of the alleged frauds, defendants relied on the services of "Law Firm LLC" – "a fictitious name for the non-party law firm which represented [d]efendants in matters related to Omar [Holding], New Life[,] and Liptis," FAC ¶ 40 n.7 – and their accountants. Plaintiffs allege that Law Firm LLC, "either knowingly or unknowingly, facilitated the fraudulent transactions" by preparing the "false and misleading documents" that defendants allegedly used to perpetrate the alleged fraudulent scheme. FAC ¶ 66. Meanwhile, plaintiffs contend that after defendants defrauded their sisters of their Liptis USA stock, defendants "caused their accountants to

5

fraudulently report in the [s]isters' federal tax returns that the payments were for the purported sale of the [s]isters' shares of stock of Liptis."  FAC ¶ 39.

Plaintiffs filed a complaint against defendants in November 2018, which they amended three months later after defendants submitted a pre-motion letter stating the bases on which they would move to dismiss.  The amended complaint asserted a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and state law claims for breach of fiduciary duty, conversion, and unjust enrichment.  Federal jurisdiction was predicated solely on 28 U.S.C. § 1331 by virtue of the RICO claim. Before the Court is Sharif's motion to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

---

[2] Plaintiffs submitted a declaration from Sami in support of their opposition brief.  See ECF No. 48.  They also submitted a declaration from the sisters. See ECF No. 47.  However, in assessing the sufficiency of a complaint under Rule 12(b)(6), in addition to the complaint, the Court may consider only a "written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers, 282 F.3d at 153).  Both declarations, which consist solely of the declarants' assertions and otherwise append no documents, plainly fail to satisfy any of these requirements.  By contrast, the amended complaint's thirty-sixth paragraph incorporates by reference the Stock Purchase Agreement attached as Exhibit 1 to the Declaration of Annie C. Kubic.

**DISCUSSION**

## A. Plaintiffs' RICO Claim

Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court[.]" 18 U.S.C. § 1964(c). Specifically, plaintiffs assert a claim against defendants for alleged violations of §§ 1962(b)[3], (c)[4], and (d)[5].

Sharif advances various arguments for why the Court should dismiss this claim, including that the Private Securities Litigation Reform Act of 1995 (the "PSLRA") precludes plaintiffs from asserting it. Because the Court agrees with this contention, it declines to address the balance of Sharif's arguments and dismisses plaintiffs' RICO claim.

### 1. Pleading Standard

The Court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must offer "more than labels and conclusions" in pleading the elements of its claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

---

[3] 18 U.S.C. § 1962(b) prohibits "any person through a pattern of racketeering activity . . . [from] acquir[ing] or maintain[ing], directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

[4] 18 U.S.C. § 1962(c) proscribes "any person . . . associated with any enterprise . . . [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

[5] 18 U.S.C. § 1962(d) outlaws "conspir[ing] to violate" the other subsections of § 1962, including §§ 1962(b) and (c).

(2007).  Instead, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.

### 2. The RICO Amendment

To plead a violation of § 1962, a plaintiff must plead "a pattern of racketeering activity," which § 1961(5) defines as "at least two acts of racketeering activity[.]"  Section 1961(1), in turn, defines "racketeering activity" as any one of an enumerated set of offenses, or, in RICO parlance, "predicate acts."  Predicate acts include, among other things, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C § 1343, and bank fraud, 18 U.S.C. § 1344.

However, "[s]ection 107 of the PSLRA – which was enacted as an amendment to the RICO statute and accordingly is often referred to as the 'RICO Amendment' – provides that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.'"  MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 273 (2d Cir. 2011) (quoting 18 U.S.C. § 1964(c)).  The RICO Amendment not only "'eliminate[s] securities fraud as a predicate offense in a civil RICO action,'" but it also "bar[s] a plaintiff

from 'pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" Id. at 278-79 (internal alteration omitted) (quoting H.R. Rep. 104-369, at 47 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 746).

The RICO Amendment applies expansively. Id. at 278. It applies "even where the plaintiff could not bring a private securities law claim against the same defendant." Id. at 280. It also "does not require that the same plaintiff who sues under RICO . . . be the one who can sue under securities laws." Id. at 278.

"[W]here plaintiffs allege 'a single scheme,' courts have held that 'if any predicate act is barred by the PSLRA it is fatal to the entire RICO claim.'" In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F.Supp. 2d 666, 730 (S.D.N.Y. 2013), vacated on other grounds sub nom., Gelboim v. Bank of America Corp., 823 F.3d 759 (2d Cir. 2016) (quoting Ling v. Deutsche Bank, No. 04 Civ. 4566 (HB), 2005 WL 1244689, at *4 (S.D.N.Y. May 26, 2005)); see also Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC, 286 F.Supp. 3d 634, 648 (S.D.N.Y. 2017) ("Zohar") ("While [two alleged predicate acts] escape the RICO bar, the allegations relating to [the third] are fatal to the RICO claim." (internal footnote omitted)).

Plaintiffs allege that from "2009 through 2017," defendants engaged in a "course of conduct" to "acquire the[ir] [s]isters' interests in . . . Liptis, and to mortgage the real properties owned by Liptis, New Life[,] and Omar Holding in order to obtain money for their own interests to the detriment of the [p]laintiffs." FAC ¶ 71. This course of conduct amounts to a single scheme. See, e.g., Gilmore v. Gilmore, No. 09 Civ. 6230 (WHP), 2011 WL 3874880, at *2, *6 (S.D.N.Y. Sept. 1, 2011) (finding "various plots" to "loot[] the family companies through self-dealing, fraudulent securities transactions, and overbilling" over the span of twelve years to "count[] as a single scheme"). Plaintiffs concede as much in their opposition brief, which refers to defendants' alleged misconduct exclusively as one "scheme." See Pls.' Opp. to Def.'s Mot. to Dismiss ("Opp.").

As part of this scheme, plaintiffs allege that defendants defrauded the sisters into selling their Liptis USA stock, which fraud was plainly actionable as securities fraud. Indeed, fraud is actionable as securities fraud if it is "'undertaken in connection with the purchase [or sale] of a security.'" In re Platinum-Beechwood Litig., No. 18 Civ. 6658 (JSR), 2019 WL 2569653, at *4 (S.D.N.Y. June 21, 2019) (quoting MLSMK Inv. Co., 651 F.3d at 280) (deeming claim barred by the RICO Amendment); see also Zohar, 286 F.Supp. 3d at 645 ("the 'requisite showing . . . is deception in connection with the purchase or sale of any security'"

10

(quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006))).  And there is no dispute that the shares of Liptis USA were securities.  E.g., Nelson v. Stahl, 173 F.Supp. 2d 153, 164 (S.D.N.Y. 2001) ("[S]tock, whether in a publicly held company or . . . in a closely held corporation, constitutes a security governed by the federal securities laws.").

Given this clear assertion of a securities fraud, plaintiffs' reliance on certain alleged mail and wire frauds is unavailing. Specifically, plaintiffs allege that defendants violated the federal mail and wire fraud statutes, which proscribe "the use of the mail or wires in furtherance of a scheme to defraud," Bascuñán v. Elsaca, 927 F.3d 108, 122 (2d Cir. 2019) (emphasis deleted), by using such means to transmit to Sherin and Asha the $80,000 and $30,000 payments for their Liptis USA stock.  See FAC ¶¶ 37, 72-74 (alleging predicate offenses of mail, wire, and bank fraud).

The RICO Amendment accordingly bars plaintiffs' RICO claim, and does so regardless of whether the other predicate acts that plaintiffs allege are based on conduct that is not actionable as securities fraud.  See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F.Supp. 2d at 731; Seippel v. Jenkens & Gilchrist, P.C., 341 F.Supp. 2d 363, 373 (S.D.N.Y. 2004) ("Having alleged . . . that defendants' acts were part of a single fraudulent scheme, [plaintiffs] cannot now divide the scheme into its various component acts.  Allowing such surgical presentation

11

of the cause of action here would undermine the congressional intent behind the behind the RICO Amendment." (internal quotation marks omitted)).

3. Leave to Amend

In a footnote in their opposition brief, plaintiffs request leave to amend their amended complaint to add allegations concerning "(i) pleading fraudulent concealment as a tolling exception to the statute of limitations; (ii) further factual support evidencing the association-in-fact enterprise of [d]efendants . . .; and (iii) casting the [p]laintiffs' claims, in part, as derivative rather than personal." Opp. at 3 n.2. Such allegations would not obviate application of the RICO Amendment to plaintiffs' RICO claim. Thus, the Court denies plaintiffs' request as futile. See Dluhos v. Floating & Abandoned Vessel, Known as "New York", 162 F.3d 63, 69 (2d Cir. 1998) (explaining that courts may deny leave to amend for futility of amendment); see also Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)").

**B. Supplemental Jurisdiction**

The sole basis for federal jurisdiction over this dispute is 28 U.S.C. § 1331 because of the federal question that plaintiffs' RICO claim presents. Because the Court has dismissed that claim,

it has discretion under 28 U.S.C. § 1367(c)(3) to dismiss plaintiffs' remaining state law claims. When exercising this discretion, "district courts should balance the values of judicial economy, convenience, fairness, and comity – the 'Cohill' factors." Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Weighing these factors, the Court declines to exercise supplemental jurisdiction. "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Cohill, 484 U.S. at 350 n.7). This is the usual case. Having eliminated plaintiffs' RICO claim at the pleading stage, the Court has not invested significant resources in the case. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 123 (2d Cir. 2006). Moreover, the parties may conveniently litigate the case in New York state court because all but one of them reside in that state. Comity also favors New York courts adjudicating claims arising under New York's laws. Finally, there is no indication that dismissal would prejudice plaintiffs.

## CONCLUSION

For the reasons stated above, the Court grants Sharif's motion to dismiss the amended complaint, and dismisses plaintiffs' RICO claim with prejudice and their state law claims without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 44, and to close the case.[6]

**SO ORDERED.**

Dated:    New York, New York
          November 5, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[6] The parties requested oral argument pursuant to the Court's Individual Practices § 2.H. Given that the dispositive issue is strictly governed by statute, the Court has concluded that the resolution of this motion would not be advanced by oral argument and thus oral argument will not be held.